1  STEPHEN M. HAYES (SBN 83583)
   STEPHEN P. ELLINGSON (SBN 136505)
2  JAMIE A. RADACK (SBN 221000)
   NICOLE C. WEBSTER (SBN 311863)
3  HAYES SCOTT BONINO ELLINGSON & McLAY, LLP
   203 Redwood Shores Parkway, Suite 480
4  Redwood City, California 94065
   Telephone: 650.637.9100
5  Facsimile: 650.637.8071

6  Attorneys for Defendant
   STATE FARM GENERAL INSURANCE COMPANY

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10  FLOYD CASTRO,                    CASE NO.  4:15-cv-05728 WHO

11              Plaintiff,

12      v.                           **DEFENDANT STATE FARM GENERAL
                                     INSURANCE COMPANY'S NOTICE OF
13  STATE FARM GENERAL               MOTION AND MEMORANDUM OF POINTS
    INSURANCE COMPANY and DOES 1     AND AUTHORITIES IN SUPPORT OF ITS
14  through 10, inclusive,           MOTION FOR SUMMARY JUDGMENT, OR
                                     IN THE ALTERNATIVE, PARTIAL
15              Defendants.          SUMMARY JUDGMENT**

16                                   **Date:      May 31, 2017
                                     Time:      2:00 p.m.
17                                   Ctrm:      2, 17th Floor
                                     Judge:     Hon. William H. Orrick**

18

19

20

21

22

23

24

25

26

27

28

770311

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ - 1 -

II.     SUMMARY OF UNDISPUTED MATERIAL FACTS ................................... - 4 -

        A.      Plaintiff Submits A Claim To State Farm After An Alleged Burglary
                In April 2014 ............................................................................................. - 4 -

        B.      Plaintiff Admits He Gave Conflicting Accounts Regarding His
                $6,000 Socket Set ...................................................................................... - 7 -

        C.      State Farm Questions Plaintiff Regarding the Alleged Gift of the
                Martin Guitar ............................................................................................. - 7 -

        D.      State Farm Notices Plaintiff's Examination Under Oath ......................... - 8 -

        E.      Plaintiff Provides Inconsistent EUO Testimony ..................................... - 8 -

        F.      Plaintiff Submits an Unconformed Bankruptcy Amendment ................. - 10 -

        G.      State Farm Completes its Investigation ................................................. - 10 -

        H.      The Instant Lawsuit ............................................................................... - 11 -

        I.      Plaintiff's State Farm Homeowner's Policy .......................................... - 11 -

III.    STATE FARM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE
        THERE IS NO GENUINE ISSUE OF MATERIAL FACT ........................... - 12 -

IV.     JUDICIAL ESTOPPEL MANDATES SUMMARY JUDGMENT FOR
        STATE FARM ............................................................................................... - 13 -

        A.      Plaintiff's Failure To Disclose A Claim Constitutes An Inconsistent
                Position ................................................................................................... - 13 -

        B.      Plaintiff Convinced The Bankruptcy Court To Accept His Prior
                Position ................................................................................................... - 14 -

        C.      Plaintiff Would Derive An Unfair Benefit If This Claim Is Not
                Judicially Estopped ................................................................................ - 15 -

V.      PLAINTIFF'S MATERIAL MISREPRESENTATIONS MANDATE
        SUMMARY JUDGMENT FOR STATE FARM ........................................... - 16 -

VI.     PLAINTIFF'S BAD FAITH CLAIM FAILS BECAUSE STATE FARM
        HAD REASONABLE GROUNDS TO DENY HIS CLAIM AS A MATTER
        OF LAW ......................................................................................................... - 20 -

VII.    PLAINTIFF'S PUNITIVE DAMAGE CLAIM FAILS AS A MATTER OF
        LAW ............................................................................................................... - 24 -

VIII.   CONCLUSION ................................................................................................ - 25 -

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

**Cases**

3

*Abdelhamid v. Fire Ins. Exchange,*
4     182 Cal.App.4th 990 (2010) ................................................................................. 22

5 *Aceves v. Allstate Ins. Co.,*
    68 F.3d 1160 (9th Cir. 1996) ............................................................................. 20

6 *Ajaka v. BrooksAmerica Mortgage Corporation,*
7     453 F.3d 1339 (11th Cir.2006) .......................................................................... 14

*Anderson v. Liberty Lobby, Inc.,*
8     477 U.S. 242, 106 S.Ct. 2505 (1986) ......................................................... 12, 13

9 *In Re Angela P.,*
    28 Cal.3d 908 (1981) ......................................................................................... 24
10

*Arnold v. Weast,*
11     869 F.2d 240 (4th Cir.1989) ......................................................................... 15, 16

12 *Austero v. National Casualty Co.,*
    84 Cal.App.3d 1 (1978) ..................................................................................... 21

13 *Basich v. Allstate Ins. Co.,*
14     87 Cal.App.4th 1112 (2001) .............................................................................. 24

15 *Beck v. State Farm Mut. Auto. Ins. Co.,*
    54 Cal.App.3d 347 (1976) ................................................................................. 24

16 *Bryant v. Adventist Health System/West,*
17     289 F.3d 1162 (9th Cir. 2002) .......................................................................... 12

*California Shoppers, Inc. v. Royal Globe Ins. Co.,*
18     175 Cal.App.3d 1 (1985) ................................................................................... 20

19 *Century Surety Co. v. Polisso,*
    139 Cal.App.4th 922 (2006) .............................................................................. 21
20

*Chaidez v. Progressive Choice Ins. Co.,*
21     2013 WL 1935362 (C.D.Cal. 2013) ............................................................ 21, 22

22 *Chateau Chamberay Homeowners Assn. v. Associated Int'l. Ins. Co.,*
    90 Cal.App.4th, 335, 346 (2001) ...................................................................... 21

23 *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.,*
24     92 Cal.App.4th 886 (2001) ................................................................................ 22

25 *Cummings v. Fire Ins. Exch.,*
    202 Cal.App.3d 1407 (1988) ....................................................................... 16, 17

26 *Del Carmen Guadalupe v. Agosto,*
27     299 F.3d 15 (1st Cir. 2002) ............................................................................... 12

28

             ii

*Essex Ins. Co. v. Hartford Fire Ins. Co.,*
  2013 WL 3389549 (C.D.Cal. 2013) ............................................................. 16

*Fine v. Bellefonte Underwriters Ins. Co.,*
  725 F.2d 179 (2nd Cir. 1984) .................................................................... 16

*Freeman v. Allstate Life Ins. Co.,*
  253 F.3d 533 (9th Cir. 2001) .................................................................... 13

*Hamilton v. Greenwich Investors XXVI, LLC,*
  195 Cal.App.4th 1602 (2011) .................................................................... 15

*Hamilton v. State Farm Fire & Cas. Co.,*
  270 F.3d 778 (9th Cir.2001) ............................................................... 13, 14

*Hardage v. CBS Broad. Inc.,*
  427 F.3d 1177 (9th Cir. 2006) ................................................................... 13

*James River Ins. Co. v. Herbert Schenk, P.C.,*
  523 F.3d 915 (9th Cir. 2008) .................................................................... 12

*Kransco v. American Surplus Lines Ins. Co.,*
  23 Cal.4th 390 (2000) ............................................................................ 22

*Love v. Fire Ins. Exch.,*
  221 Cal.App.3d 1136 (1990) ..................................................................... 20

*Lunsford v. Am. Guar. & Liab. Ins. Co.,*
  18 F.3d 653 (9th Cir. 1994) ..................................................................... 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) .............................................................................. 12

*Mock v. Mich. Millers Mut. Ins. Co.,*
  4 Cal.App.4th 306 (1992) .................................................................... 24, 25

*National Life & Accident Ins. Co. v. Edward,*
  119 Cal.App.3d 326 (1981) ...................................................................... 21

*New Hampshire v. Maine,*
  532 U.S.742 (2001) .............................................................................. 13

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.,*
  210 F.3d 1099 (9th Cir. 2000) ................................................................... 13

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
  848 F.2d 414 (3rd Cir.), *cert. denied,* 488 U.S. 967 (1988) ................................. 15

*Patrick v. Maryland Casualty Co.,*
  217 Cal.App.3d 1566 (1990) ..................................................................... 24

*Perovic v. Glens Falls Ins. Co.,*
  401 F.2d 145 (9th Cir. 1968) .................................................................... 16

*Ram v. Infinity Select Ins.,*
  807 F.Supp.2d 843 (N.D.Cal. 2011) .............................................................. 16

**STATE FARM'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO ITS
MOTION FOR S/J, OR IN THE ALTERNATIVE, PARTIAL S/J - CASE NO. 4:15-cv-05728-WHO**

*Rappaport-Scott v. Interinsurance Exchange of Auto Club,*
    146 Cal.App.4th 831 (2007)........................................................................................21

*Reader's Digest Ass'n v. Superior Court,*
    37 Cal.3d 244 (1984)................................................................................................24

*Rose v. Beverly Health and Rehabilitation Services, Inc.,*
    356 B.R. 18 (E.D.Cal.2006) ....................................................................................13

*Swendson v. Ocwen Loan Servicing, LLC,*
    2014 WL 1155794 (E.D.Cal.2014) .........................................................................13

*T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Assn.,*
    809 F.2d 626 (9th Cir.1987)....................................................................................12

*In re Taylor,*
    215 B.R. 882 (S.D.Cal.1997) ..................................................................................15

*Estate of Tucker v. Interscope Records,*
    515 F.3d 1019 (9th Cir. 2008) ................................................................................12

*Varig Airlines v. Walter Kidde & Co.,*
    960 F.2d 1235 (9th Cir. 1982) ................................................................................12

*Waller v. Truck Insurance Exchange,*
    11 Cal.4th 1 (1995)..................................................................................................20

**Statutes**

11 U.S.C. § 1329 ............................................................................................................15

Cal. Civ. Code § 3294 ....................................................................................................24

Ins. Code, § 359 .............................................................................................................17

Fed.R.Civ.P. 56 ..........................................................................................................1, 12

**STATE FARM'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO ITS MOTION FOR S/J, OR IN THE ALTERNATIVE, PARTIAL S/J - CASE NO. 4:15-cv-05728-WHO**

**NOTICE**

**TO THE PLAINTIFF AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that on May 31, 2017, in Courtroom 2, 17th Floor of the United States District Court located at 450 Golden Gate Ave., San Francisco, California, defendant State Farm General Insurance Company ("State Farm") will, and hereby does, move for summary judgment, or in the alternative, partial summary judgment pursuant to Fed.R.Civ.P. 56 as follows:

1.    State Farm is entitled to summary judgment on the grounds that the undisputed facts establish that plaintiff's claims for breach of contract and bad faith are precluded on the grounds of judicial estoppel because plaintiff failed to disclose this claim to the Bankruptcy Court;

2.    In the alternative, State Farm is entitled to summary judgment on the grounds that the undisputed facts establish that plaintiff's claims for breach of contract and bad faith fail as a matter of law on the grounds that plaintiff made material misrepresentations during his claim that vitiated coverage under his State Farm policy;

3.    In the alternative, State Farm is entitled to partial summary judgment of plaintiff's bad faith cause of action and claim for punitive damages on the grounds that the undisputed facts establish that State Farm reasonably investigated plaintiff's claim as a matter of law;

4.    In the alternative, State Farm is entitled to partial summary judgment of plaintiff's claim for punitive damages because the undisputed facts establish there is no clear and convincing evidence that State Farm acted with malice, fraud or oppression in handling plaintiff's claim.

The motion for summary judgment, or in the alternative, partial summary judgment is based upon this Notice, the Memorandum of Points and Authorities, in support thereof, the declarations of Jamie A. Radack, Paula M. Shaw, and Maria Okino, State Farm's reply brief, all other pleadings and papers filed herein, and any other matters as the Court deems appropriate.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The undisputed facts mandate summary judgment on the grounds that plaintiff made material misrepresentations in his claim to State Farm following an alleged burglary on April 20, 2014. As a threshold matter, plaintiff cannot dispute that his claim is judicially estopped because he failed to

770311

- 1 -

1  disclose it to the Bankruptcy Court.  Plaintiff also cannot dispute that numerous misrepresentations,

2  contradictions and inconsistencies were revealed during State Farm's investigation of his claim.

3  Plaintiff cannot prevail on his bad faith claim simply because State Farm's denial of the claim was

4  purportedly incorrect.  Bad faith requires plaintiff to prove that State Farm's handled the claim

5  unreasonably and denied it without proper cause.  Yet the undisputed facts establish that State Farm

6  reasonably investigated plaintiff's claim and had ample cause to conclude denial was appropriate.

7        Specifically, plaintiff cannot dispute he admitted to State Farm that he twice intentionally

8  misrepresented his acquisition of a high-valued tool, the $6,000 socket set.  These admitted

9  misrepresentations alone were a sufficient basis for State Farm's denial of plaintiff's claim as a

10  matter of law.  Plaintiff also cannot dispute that State Farm's investigation revealed numerous

11  misrepresentations, inconsistencies and contradictions material to the value of his claim as follows:

| Property Claimed | Plaintiff's Claim | Evidence Contradicting His Claim |
| --- | --- | --- |
| 1.  Snap On Socket Set | • Plaintiff claimed he bought the socket set for $6,000 at a swap meet in Portland, Oregon.<br>• Plaintiff claimed he bought the set from Brian Tilseth, and submitted a typed statement, purportedly from Brian "Tillseth" [sic], as proof.<br>• Plaintiff claimed he traded two pounds of marijuana for the set. | • Plaintiff *admitted* he did not buy the socket set in Portland.<br>• Tilseth denied having any knowledge of the set and writing the statement.<br>• Plaintiff *admitted* he did not pay Tilseth $6,000 for the set as claimed in the statement, and submitted a new statement that he had traded two pounds of marijuana to Tilseth for it.<br>• To Farmers, plaintiff claimed a Snap On socket set purchased for $400 from Gino Herrera and submitted a third receipt for the set. |
| 2.  Guitar | • Plaintiff claimed he was gifted the $3,250 Fender guitar that was stolen.<br>• Plaintiff claimed it was actually a $47,999 Martin guitar gifted by Doug Freitas that was stolen, not the Fender, and he submitted a typed statement from Doug "Fretus" [sic] confirming the gift. | • The typed statement is identical in format to the statement from "Tillseth" [sic], which Tilseth denied writing.<br>• Freitas refused to discuss the guitar with State Farm.<br>• To Farmers, plaintiff claimed two guitars: a $900 Fender and a $5,300 Martin acoustic guitar. |
| 3.  Marshall Amplifier | • Plaintiff submitted Guitar Center receipt, sales number 2241604872, dated March 22, 2013 for the allegedly stolen amplifier. | • Plaintiff submitted the same receipt to State Farm for the same amplifier in his prior November 2013 claim. |

- 2 -

| Property Claimed | Plaintiff's Claim | Evidence Contradicting His Claim |
|---|---|---|
| 4. Husqvarna Chainsaw | • Plaintiff claimed he bought the chainsaw from Sears for $600.<br>• Plaintiff later claimed the chainsaw was bought for $460.<br>• Plaintiff claimed that the receipt for the chainsaw was in the safe that was stolen in November 2013. | • To Farmers, plaintiff claimed a Husqvarna chainsaw that he had purchased for $200 from Gino Herrera on June 4, 2013, and submitted a handwritten receipt. |
| 5. 2 Snap On Impact Wrenches | • Plaintiff claimed he was gifted two Snap On impact wrenches, valued at $1,600 and $1,200. | • To Farmers, plaintiff claimed two Snap On impact wrenches purchased for $460 and $200 from Gino Herrera, and submitted a handwritten receipt. |
| 6. Snap On Vac Spotter | • Plaintiff claimed he bought the Snap On vac spotter in Portland for $1,200. | • To Farmers, plaintiff claimed a Snap On vac spotter purchased for $400 from Gino Herrera, and submitted a handwritten receipt. |
| 7. Snap On Air Hammer Set | • Plaintiff claimed he was gifted the Snap On air hammer set, valued at $550. | • To Farmers, plaintiff claimed a Snap On air hammer set purchased for $200 from Gino Herrera, and submitted a handwritten receipt. |
| 8. Snap On Die Grinder | • Plaintiff claimed he was gifted the Snap On die grinder, valued at $350. | • To Farmers, plaintiff claimed a Snap On die grinder purchased for $200 from Gino Herrera, and submitted a handwritten receipt. |
| 9. Tascam Recorder | • Plaintiff claimed the Tascam Recorder was valued at $500, then $1,600. | • To Farmers, plaintiff claimed he paid $460 for the Tascam Recorder. |
| 10. Martin Hunting Bow | • Plaintiff claimed he bought the Martin bow in Portland, valued at $1,000.<br>• Plaintiff later valued the bow at $710. | • To Farmers, plaintiff claimed the Martin bow purchased for $200 from Gino Herrera, and submitted a handwritten receipt. |

A misrepresentation as to any one of these items would entitle State Farm to summary judgment. If plaintiff was not entitled to policy benefits in the first instance, his bad faith claim fails.

Even if the Court finds a triable issue of fact as to whether plaintiff was entitled to policy benefits, his bad faith claim fails as a matter of law. The undisputed facts establish numerous false statements, inconsistencies and contradictions in plaintiff's presentation of his claim. For example, plaintiff cannot dispute that he admitted to misrepresenting his claim when he informed State Farm that the socket set sale was actually a marijuana trade. Plaintiff cannot dispute that he claimed the same Marshall amplifier he reported in his prior claim to State Farm. These undisputed facts establish that State Farm is entitled to partial summary judgment on plaintiff's bad faith claim.

1    At a minimum, State Farm is entitled to partial summary judgment as to plaintiff's claim for

2    punitive damages.  There simply is no evidence, let alone clear and convincing evidence, that State

3    Farm engaged in malice, fraud or oppression.  Thus the punitive claim fails, as a matter of law.

4        Accordingly, State Farm respectfully submits its motion must be granted.

5                **II.  SUMMARY OF UNDISPUTED MATERIAL FACTS**

6    **A.**    **Plaintiff Submits A Claim To State Farm After An Alleged Burglary In April 2014**

7        Plaintiff claims that on April 20, 2014, he left his home at approximately 11:00 a.m. and

8    returned around 2:15 p.m. to discover that his home had been burglarized.  (Index of Exhibits in

9    support of State Farm's Motion for Summary Judgment, or in the Alternative, Partial Summary

10   Judgment, ("Index") Ex. 2, p. 54:11-17.)  Plaintiff claimed that he called the Oakland Police

11   Department, ("OPD") and he was told to file a claim online.  Plaintiff filed a police report online at

12   7:35 p.m. and stated that the incident occurred at 7:25 p.m. He reported $6,600 in cash stolen, but no

13   other personal property.  (Index, Ex. 47, pp. 390-391.)  The next day, plaintiff added a narrative to

14   the report, but did not report any additional items stolen.  (Index, Ex. 47, p.392.)

15       Plaintiff submitted a claim to State Farm on April 23, 2014.  State Farm took plaintiff's

16   recorded statement.  He claimed damage to several doors and that $6,500 in cash, a Mackie PA

17   worth $700 or $900, Snap On tools, and a video surveillance system were stolen.  Plaintiff denied the

18   loss of any other music equipment.  (Index, Ex. 2, pp. 56:6-21; 57:19-23; 58:2-5; 59:1-14; 59:23-

19   60:5; 60:17-24; 69:10-16; 70:5-71:3.)  State Farm sent plaintiff a Personal Property Inventory

20   Customer Worksheet and requested receipts and repair estimates.  (Index, Ex. 3, pp. 73-74.)

21       On May 6, 2014, State Farm received plaintiff's sworn Personal Property Inventory

22   Worksheet ("Inventory").  The Inventory claimed the following items, origins, duration of

23   ownership, and values: (1) Husqvarna 18" chainsaw, Sears, two years, $600; (2) Tascam recorder,

24   online, three years, $500; (3) Snap On impact wrench AT 1300, gift, one year, $1,600, (4) Snap On

25   die grinder PT 410, gift, one year, $350; (5) Socket Set 5175M deep 1" drive, Portland, three years,

26   $6,000; (6) Martin hunting bow, Portland, 17 years, $1,000; (7) Snap On vac spotter VA1102,

27   Portland, three years, $1,200; (8) Roland electric drum TD 20, Electriq, two years, $4,000; (9)

28   Mackie PA 808S, Guitar Center, six years, $1,100; (10) 2 JBL JRX 100 [speakers], Guitar Center,

770311                                    - 4 -

1    six years, $600; (11) Fender Princeton Chorus [amplifier], Guitar Center, sxi years, $900; (12) two

2    JBL JRX 100-JRX 115 [speaker cabinets], Guitar Center, six years, $600; (13) Zildjian 22" ride

3    cymbal, Guitar Center, six years, $360; (14) Fender Kingman Pro acoustic guitar, gift, six months,

4    $3,250; (15) Snap On impact wrench 1", gift, two years, $1,200; (16) Snap On air hammer set, gift,

5    two years, $550.  (Index, Ex. 5, pp. 78-79.)

6        Plaintiff later sent State Farm an unverified handwritten list of allegedly stolen items and

7    Guitar Center receipts.  The list included 10 items reported on the Inventory, but some at different

8    values.  The Guitar Center receipts included: (1) two different[1] purchase receipts for the same

9    Mackie PA; (2) two different receipts for the same two JBL JRX speakers; and (3) the same receipt

10   for the Marshall JVM410HU 100 watt amplifier plaintiff had claimed in the November 2013 loss.

11   (Index, Ex. 6, pp. 80-91.)

12       On May 29, 2014, State Farm requested receipts for the items reported in the Inventory,

13   including the socket set, electric drum, acoustic guitar, and tools.  (Index, Ex. 7, pp. 92-93.)

14       On June 17, 2014, plaintiff e-mailed State Farm a typed estimate for repair to the damaged

15   doors.  The estimate was from "Ronil C." at "Security Inovations [sic]."  The estimate charged for

16   both labor and materials, totaling $6,635.00.  (Index, Ex. 8, pp. 95-96.)

17       Plaintiff provided a second, different typed estimate from "Security Inovations [sic]" for the

18   door repairs on June 19, 2014.  This estimate removed a labor charge and applied a 15% discount to

19   total $4,789.75.[2]  (Index, Ex.10, pp. 100-101.)

20       That day, State Farm obtained the OPD report, and learned that plaintiff had only reported

21   $6,600 cash stolen.  (Index, Ex.11, p. 104.)

22       State Farm sent plaintiff an email on June 28, 2014 stating that the Tascam Recorder sold for

23   $1,600.  (Index, Ex.12, p. 107.)

24       Plaintiff also called State Farm and stated that the Fender Acoustic Guitar was a high-end

25   guitar worth $3,000, gifted to him from Jimmy Johnson.  Plaintiff said that Johnson was working in

26   Alaska, and that he did not have his contact information.  Plaintiff also said that Doug knew about

---

27   [1] Receipts differed by date, receipt number, and price, but the item's serial number were consistent.

28   [2] State Farm paid plaintiff $4,789.75 for the door repairs.  (Index, Ex. , pp. .)

1  the guitar. (Index, Ex.13, pp. 108-109.)

2      On July 1, 2014, plaintiff submitted a Supplemental Property List ("List") to his police report

3  regarding the additional claimed items reported to State Farm.  The List included the 16 items

4  plaintiff reported in his Inventory, except for the Fender guitar and Fender amplifier.  The List added

5  3 Marshall amplifiers and speaker cabinets, and a Martin acoustic guitar.  (Index, Ex.15, p. 112.)

6      On July 15, 2014, State Farm received two identical-looking typed statements from plaintiff.

7  One purported to document the gift of a Martin acoustic guitar to plaintiff from Douglas "Fretus,"

8  but misspelled the true name "Freitas."  (Index, Ex.16, p. 113.) This was the first time plaintiff

9  reported that a Martin guitar had been stolen; he previously reported a Fender guitar.  The second

10  typed statement purported to document the sale of a Snap On socket set to plaintiff from Brian

11  Tilseth on May 12, 2011 for $6,000.  Similarly, this statement twice misspelled Tilseth's last name

12  as "Tillseth." (Index, Ex.16, p. 114.)

13      By letter dated June 18, 2014, State Farm reiterated its need for the revised police report with

14  his complete personal property inventory and documentation for the Tascam recorder, socket set,

15  shop vac, Roland drum brain, amplifiers, and Fender guitar.  (Index, Ex.17, pp. 115-116.)

16      On July 22, 2014, State Farm discovered that plaintiff had a lengthy claims history, many of

17  which had been referred to the respective insurance company's Special Investigative Unit ("SIU").

18  (Index, Ex.18, pp. 118-129.)  One of the claims included a burglary loss just months before,

19  November 21, 2013, which plaintiff had submitted to State Farm and which was paid.  As part of

20  that claim, plaintiff alleged that a Marshall amplifier was stolen.  (Index, Ex. 44, pp. 330.) Plaintiff

21  submitted Guitar Center receipt number 2241604872, dated March 22, 2013, for these items.

22  Plaintiff alleged the loss of the same Marshall amplifier as alleged in this claim, and submitted the

23  same Guitar Center receipt, number 2241604872.  (Index, Exs. 6, p. 89 and 44, p. 332.)

24      On August 1, 2014, State Farm took plaintiff's recorded statement again.  Plaintiff twice

25  changed his claim regarding the number and brand of amplifiers that were stolen.  Plaintiff admitted

26  that he had not included any of the claimed musical items or tools in his bankruptcy.  State Farm

27  informed plaintiff that his failure to include items in his bankruptcy would affect their insurable

28  interest.  (Index, Ex. 20, pp. 159:2-9; 159:21-160:20; 161:17-162:25; 163:6-11.)

1     State Farm called Douglas Freitas on August 5, 2014, to verify the Martin guitar gift to

2  plaintiff.  Freitas gave State Farm his e-mail address and asked State Farm to contact him that way.

3  That same day, State Farm e-mailed Douglas Freitas at the address he provided regarding the alleged

4  gift of the Martin guitar, but the e-mail did not go through.  (Index, Exs. 21, p. 168 and 22, p. 169.)

5     On August 18, 2014, State Farm received plaintiff's Chapter 13 Bankruptcy Petition, filed on

6  August 31, 2012.  Plaintiff's schedules indicated that he owned $2,000 worth of "miscellaneous

7  household goods and furnishings," but did not include any of the items claimed to State Farm.

8  Plaintiff's bankruptcy filings included other insurance claims, but not this claim.  (Index, Exs. 24,

9  pp. 173, 175 and 48, pp. 416, 418.)  The Bankruptcy Court confirmed plaintiff's amended Chapter

10  13 plan on December 28, 2012.  (Index, Ex. 48, p. 413.)

11  **B.**    <u>**Plaintiff Admits He Gave Conflicting Accounts Regarding His $6,000 Socket Set**</u>

12     State Farm spoke to Brian Tilseth on August 27, 2014 about the alleged socket set sale.

13  Tilseth said he did not know where plaintiff had obtained the tools and denied selling or giving any

14  tools to plaintiff.  Tilseth also denied writing a statement that he had sold any property to plaintiff.

15  (Index, Exs. 26, pp. 187:16-182:2; 27, pp. 193-194).

16     On August 28' 2014, plaintiff told State Farm Tilseth had actually given the tools to plaintiff

17  in exchange for $6,000 worth of marijuana.  (Index. Ex. 28, p. 195.)  The same day, State Farm

18  called Tilseth, who explained that he had actually traded the tools for two pounds of marijuana.

19  Tilseth said the replacement cost of the tools was $8,000 to $9,000, and the marijuana worth

20  $5,000.  Tilseth said he typed a receipt for the Snap On tools at the time of the trade, but that plaintiff

21  had the only copy.  Tilseth again denied writing the statement that he sold the tools to plaintiff.

22  (Index, Ex. 28, p. 195.)

23  **C.**    <u>**State Farm Questions Plaintiff Regarding the Alleged Gift of the Martin Guitar**</u>

24     Also on August 28, 2014, plaintiff told State Farm that he got the Martin guitar from

25  Douglas.  Plaintiff said that Douglas wrote the typed statement that plaintiff had submitted.  State

26  Farm pointed out that "Freitas" was misspelled as "Fretus" in the statement, just as "Inovations" was

27  misspelled in the door repair estimates.  (Index, Ex. 27, pp. 193.)

28

770311         - 7 -

**STATE FARM'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO ITS MOTION FOR S/J, OR IN THE ALTERNATIVE, PARTIAL S/J - CASE NO. 4:15-cv-05728-WHO**

**D.    State Farm Notices Plaintiff's Examination Under Oath**

On September 8, 2014, State Farm advised plaintiff of the inconsistencies in his claim, including but not limited to: (1) the change in origin for the socket set from flea market purchase to purchase from Tilseth, to marijuana trade with Tilseth, and Tilseth denied writing the statement that he sold plaintiff the tools; (2) plaintiff's submission of two estimates for the door repairs in which "Inovations" was spelled incorrectly, that Ronil C.'s name was Bahadur, not Casper, and Bahadur said he had only provided plaintiff with one estimate, not two as submitted by plaintiff; and (3) the quantity and brand of amplifiers stolen.  The letter included the "Concealment or Fraud" Policy provision, and noticed plaintiff's examination under oath ("EUO").  (Index, Ex. 29, pp. 196-199.)

On September 22, 2014, Paula Shaw of McDowell Shaw & Garcia notified plaintiff that she had been retained by State Farm to take his EUO.  (Index, Ex. 30, pp. 200-204.)

**E.    Plaintiff Provides Inconsistent EUO Testimony**

Shaw took plaintiff's EUO on October 8, 2014.  Plaintiff provided testimony that was inconsistent with the instant claim and with his later Farmers claim, summarized as follows:

**Martin Guitar**: Plaintiff said he initially reported that a Fender guitar stolen because the Martin guitar was in a Fender case.  He claimed he played the Martin guitar once or twice a week.  (Index, Ex. 31, pp. 239:14-240:2.) He clarified that there were two guitars, but that the Fender was not stolen.  Plaintiff stated that the Martin guitar was worth $47,999.  (Index, Ex. 31, pp. 243:9-16.) Plaintiff was asked about the statement from "Douglas Fretus F-r-e-t-u-s" confirming that he gave plaintiff the guitar, and plaintiff testified that Freitas typed the statement on plaintiff's computer.  (Index, Ex. 31, pp. 257:17-258:9.)

**Socket Set**: Plaintiff first relied on his sworn Inventory in claiming the Snap On Socket Set was a $6,000 swap meet purchase in Portland, Oregon.  (Index, Ex. p. 232:7-17.)  Plaintiff then denied paying $6,000 for the Socket Set, and instead claimed that he had traded two pounds of marijuana to Tilseth in exchange for the Socket Set.  He testified that Tilseth typed the statement confirming that he bought the tools for $6,000 cash on plaintiff's computer.  Then Tilseth gave him the statement to give to State Farm. They did not refer to the marijuana exchange because they wanted to "keep that as an undercover."  (Index, Ex. 31, 255:23-257:16; 258:4-6.)

770311                                  - 8 -

1    **Amplifiers**: Plaintiff claimed three amplifiers were stolen.  One was a Marshall amplifier

2  with speaker cabinets.  (Index, Ex. 31, pp. 246:5-22.)  The other two were an Ampeg "with a big

3  speaker cabinet, with, like, eight 12-inch speakers in it or eight Kenny speakers," and a Fender

4  (Index, Ex. 31, p. 247:22-248:17.)

5    **Husqvarna Chainsaw**: Plaintiff testified that the receipt for the chainsaw was in the safe that

6  was stolen in the prior burglary in November 2013.  (Index, Ex. p. 227:15-229:19.)

7    **Tascam Recorder**: Plaintiff agreed with his sworn Inventory the Tascam Recorder was an

8  online purchase for $500.  He did not mention his e-mail to State Farm that said it was worth $1,600.

9  (Index, Ex. 31, p. 229:25-230:11.)

10    **Snap On Impact Wrench 1" Drive**: Plaintiff said he could not recall who gifted him the

11  item.  (Index, Ex. 31, p. 231:3-23.)

12    **Snap On Impact Wrench**: Plaintiff initially thought only one wrench was stolen, but then

13  said that two wrenches were stolen.  (Index, Ex. 31, p. 240:17-241:11.)  Plaintiff reiterated that his

14  receipts for everything were in the safe stolen in the prior alleged burglary of November 2013.

15  (Index, Ex. 31, p. 241:12-15; 261:11-17.)

16    **Roland Electric Drum**: Plaintiff stated that the drum was a $4,000 purchase, but he did not

17  recall from where, and did not have a receipt.  (Index, Ex. 31, p. 234:3-22.)

18    Plaintiff attributed his recollection problems regarding previous claims to his prior head

19  injuries.  However, plaintiff admitted that no doctor had ever diagnosed him with any type of

20  memory disorder.  Plaintiff said he had not complained to any medical professional in the last 12

21  months of memory trouble, or problems remembering.  (Index, Ex. 31, pp. 218:20-219:13; 219:24-

22  220:2.)  Plaintiff denied having lost any job position in the last 24 months on account of memory

23  problems. (Index, Ex. 31, p. 220:10-12.)

24    Plaintiff paid $2,050 per month to his judgment creditors, but he was one month behind in his

25  payments.  (Index, Ex. 31, p. 213:14-214:2.)  Plaintiff reported being "probably a year" behind on his

26  mortgage.  (Index, Ex. 31, p. 215:8-22.)

27    Despite having already submitted one receipt from Tilseth for the Snap On socket set, and

28  testifying that they did  not document the marijuana exchange because they wanted to "keep that as

770311                                    - 9 -

an undercover," on October 20, 2014, plaintiff submitted a handwritten "Bill of Sale" dated "Jan 2012" that stated: "I Brian Tilseth traded Floyd Castro a Snap On socket set for 2 lbs of marijuana worth around $6,000.00." (Index, Ex. 32, p. 286.)

**F.      Plaintiff Submits an Unconformed Bankruptcy Amendment**

On November 3, 2014, plaintiff submitted to State Farm an unconformed purported amendment to his Bankruptcy Personal Property Schedule, dated November 1, 2014.  The purported amendment added 10 of the items plaintiff claimed stolen in the instant loss, totaling $61,222.  Although plaintiff included other insurance claims in his bankruptcy schedule, plaintiff omitted his November 2013 homeowner's claim and the instant claim.  (Index, Ex. 34, pp. 293-294.)  On November 3, 2014, State Farm learned that plaintiff's Bankruptcy was dismissed on October 31, 2014 for "default on Chapter 13 plan payments."  (Index, Ex. 35, p. 297.)

**G.      State Farm Completes its Investigation**

By letter dated February 13, 2015, State Farm denied plaintiff's claim based on his breach of the policy's Concealment or Fraud and Duties after Loss conditions.  State Farm outlined inconsistent and contradictory information from plaintiff, including but not limited to: (1) the change in origin for the socket set from flea market purchase to purchase from Brian Tilseth, to marijuana trade with Tilseth, and Tilseth denied writing the statement that he sold plaintiff the tools; (2) plaintiff's initial statement that no musical equipment was stolen and his subsequent claim for several items of musical equipment in his sworn Inventory; (3) plaintiff's numerous versions of the quantity, brands, and values of amplifiers stolen; (4) plaintiff's lack of documentation for high value items claimed stolen, including the chainsaw, two Snap On impact wrenches, Snap On die grinder, Snap On vac spotter, Roland electric drum, and Snap On air hammer set; (5) plaintiff's initial claim that a Fender guitar valued at $3,250 was stolen and subsequent claim that a Martin guitar worth $47,999 was stolen, in view of the fact that plaintiff testified in his EUO that he had played the guitar once or twice per week; and (6) the absence of items plaintiff claimed stolen in plaintiff's bankruptcy schedules.  (Index, Ex. 42, pp. 325-327.)  On March 3, 2015, State Farm rescinded plaintiff's policy and refunded his premium.  (Index, Ex. 43, pp. 328-329.)

**H.    The Instant Lawsuit**

On May 22, 2015, plaintiff filed the present lawsuit for breach of contract and breach of the implied covenant of good faith and fair dealing.  As part of its discovery, State Farm subpoenaed plaintiff's claim file from Farmers.[3]  In 2015, plaintiff submitted a claim to Farmers for losses arising from the same April 20, 2014 alleged burglary that he claimed with State Farm.  In his Farmers claim, plaintiff claimed in his Sworn Proof of Loss many of the same items as in his State Farm claim, including: (1) Martin guitar [and Fender guitar, which he testified at his State Farm EUO was not stolen]; (2) Snap On socket set; (3) Ampeg amplifier and Ampeg speaker cabinet; (4) Husqvarna chain saw; (5) Snap On impact wrench; (6) Snap On impact wrench; (7) Tascam recorder; (8) Snap On vac spotter; (9) Snap On air hammer set; (10) Snap On die grinder; and (11) Martin hunting bow.  (Index Ex. 45, pp. 358-363).

Plaintiff also submitted a handwritten list of items and values claimed, that stated, "all item [sic] purchased from Gino Herrera."  The list included purchase dates, and values, including: (1) Snap On impact wrench, 6/4/13, $200; (2) Snap On die grinder, 6/4/13, $200; (3) Snap On socket set, 6/4/13, $400; (4) Snap On air hammer, 6/4/13, $200; (5) Husqvarna chainsaw, 6/4/13, $200; (6) Snap On vacuum heavy duty, 7/10/13, $400; (7) Snap On impact wrench, 6/4/13, $200; (8) Martin bow, 7/10/13, $200.  (Index, Ex. 45, pp. 358-363.)  Plaintiff claimed each of these items to State Farm in the instant April 2014 loss, but for much higher values.  (Index, Ex. 5, pp. 78-79.)  As documentation for these items, plaintiff submitted to Farmers two handwritten, nearly sequential receipts purportedly from Gino Herrera documenting plaintiff's purchase of items claimed, one dated June 4, 2013, and the other July 10, 2013.  (Index, Ex. 45, p. 354.)

State Farm also subpoenaed plaintiff's transaction history from Guitar Center ("GC Records").  The GC Records included the same receipt, sales number 2241604872, for the same Marshall amplifier that plaintiff had reported in the November 2013 claim to State Farm, and which was paid by State Farm.  (Index, Ex. 46, p. 379.)

**I.    Plaintiff's State Farm Homeowner's Policy**

On the date of loss, plaintiff was insured under State Farm homeowner's policy number 57-

---

[3] Plaintiff's claim was under his Mid-Century insurance policy, a Farmers company.

770311                                             - 11 -

B3-P185-6 ("Policy"). The Policy provided that coverage would be void if plaintiff misrepresented

or concealed any material fact:

> "2. **Concealment or Fraud**. This policy is void as to you and any
> other insured, if you or any other insured under this policy has
> intentionally concealed or misrepresented any material fact or
> circumstance relating to this insurance, whether before or after a
> loss." (Index, Ex. 1, p. 32.)

### III. STATE FARM IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT

Summary judgment is appropriate where there is no genuine issue of material fact, and the

moving party is entitled to judgment as a matter of law. F.R.C.P. 56; *T.W. Elec. Serv. Inc. v. Pacific*

*Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir.1987). A fact is "material" if it might affect the

outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248-249, 106 S.Ct. 2505 (1986). A dispute is "genuine" as to a material fact if there is sufficient

evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson, supra*, 477 at

248. "[A] party cannot manufacture a genuine issue of material fact merely by making allegations in

its legal memoranda." *Varig Airlines v. Walter Kidde & Co.*, 960 F.2d 1235 (9th Cir. 1982). Where

the non-moving party has the burden of proof on an issue at trial, the movant may prevail by

presenting evidence that negates an essential element of the non-moving party's claim or by merely

pointing out that there is an absence of evidence to support an essential element of the non-moving

party's claim. *James River Ins. Co. v. Herbert Schenk, P.C.*, 523 F.3d 915, 923 (9th Cir. 2008).

If the moving party meets its initial burden, it shifts to the opposing party to establish that a

genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of [its]

pleading" but must produce evidence that "sets forth specific facts showing that there is a genuine

issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008).

"A genuine issue of material fact does not spring into being simply because a litigant claims

that one exists or promises to produce admissible evidence at trial." *Del Carmen Guadalupe v.*

*Agosto*, 299 F.3d 15, 23 (1st Cir. 2002); *see Bryant v. Adventist Health System/West*, 289 F.3d 1162,

1167 (9th Cir. 2002). A "motion for summary judgment may not be defeated . . . by evidence that is

770311                                    - 12 -

1   "merely colorable" or "is not significantly probative." *Anderson, supra,* 249-50; *Hardage v. CBS*

2   *Broad. Inc.,* 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence

3   sufficient to create a genuine issue of material fact, the moving party is entitled to summary

4   judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1103 (9th Cir. 2000).

5         California's substantive insurance law governs this diversity case. *Freeman v. Allstate Life*

6   *Ins. Co.,* 253 F.3d 533, 536 (9th Cir. 2001).

7   **IV. JUDICIAL ESTOPPEL MANDATES SUMMARY JUDGMENT FOR STATE FARM**

8         Judicial estoppel is an equitable doctrine that prohibits a party from gaining an advantage by

9   asserting one position, and then subsequently seeking to benefit by asserting an inconsistent

10  position. *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 782 (9th Cir.2001). Three factors

11  "typically inform" the court's discretionary decision as to whether judicial estoppel is proper: (1)

12  whether plaintiff's positions are clearly inconsistent, (2) whether plaintiff's position was accepted by

13  the prior court that creates a "perception" that either the first or second court was misled, and (3) the

14  creation of an unfair advantage. *New Hampshire v. Maine,* 532 U.S.742, 751 (2001). These factors,

15  however, "do not establish inflexible prerequisites." *Id.* at 751. All three factors are met here.

16  **A.**    **Plaintiff's Failure To Disclose A Claim Constitutes An Inconsistent Position**

17        The Ninth Circuit has established that judicial estoppel precludes a plaintiff from "pursuing

18  claims about which he had knowledge, but did not disclose, during his bankruptcy

19  proceedings. . ." *Hamilton, supra,* 270 F.3d at 785. In such a situation, judicial estoppel is necessary

20  to "protect the integrity of the bankruptcy process." *Hamilton, supra,* 270 F.2d at 785. A debtor

21  who does not disclose a potential claim to the bankruptcy court and then files a lawsuit on the same

22  claim "would gain a windfall by receiving the protection of the bankruptcy court without having

23  disclosed a potential asset while retaining the possibility of a settlement or verdict on the undisclosed

24  claim." *Swendson v. Ocwen Loan Servicing, LLC,* 2014 WL 1155794 at *4 (E.D.Cal.2014).

25        This duty to disclose "is a duty of candor that accrues from the time the facts that give rise to

26  the potential claim are known . . . [T]he subjective intent of the bankruptcy petitioner at the time of

27  the bankruptcy filing to pursue or not pursue the claims is not relevant." *Rose v. Beverly Health and*

28  *Rehabilitation Services, Inc.,* 356 B.R. 18, 25 (E.D.Cal.2006). Therefore, "[j]udicial estoppel will be

770311             - 13 -

1   imposed when the debtor has knowledge of enough facts to know that a potential cause of action

2   exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure

3   statements to identify the cause of action as a contingent asset." *Hamilton*, *supra,* 270 F.3d at 785.

4   Further, "[t]he debtor's duty to disclose potential claims as assets does not end when the debtor files

5   schedules, but instead continues for the duration of the bankruptcy proceeding." *Hamilton*, *supra*,

6   270 F.3d at 784-5.

7          A failure to disclose a potential claim to the bankruptcy court that is only discovered post-

8   confirmation satisfies the first element of an inconsistent position under oath.  In *Ajaka v.*

9   *BrooksAmerica Mortgage Corporation*, 453 F.3d 1339 (11th Cir.2006), when a debtor failed to

10  amend his Chapter 13 reorganization plan to reflect a potential TILA claim that he learned of after

11  confirmation, the court concluded that this failure to disclose constituted "inconsistent

12  positions...under oath in a prior proceeding." *Id.* at 1344 ("Because there is no question that [the

13  debtor] failed to assert his TILA claim as an asset in the bankruptcy proceeding, the first prong of our

14  judicial estoppel test is satisfied.").  The court found that the plaintiff had a continuing duty to

15  disclose changes in his financial situation  by amending his schedules.  *Id.*

16         Plaintiff's bankruptcy petition unequivocally asked him to identify potential insurance

17  claims.  Plaintiff listed one insurance claim and two personal injury claims, but did not include his

18  current April 2014 State Farm claim, nor his prior November 2013 State Farm claim.

19         Plaintiff cannot dispute that he had knowledge of his State Farm claim of April 2014 during

20  his bankruptcy.  The knowledge of this claim triggered plaintiff's duty to disclose the burglary and

21  any claim as a potential asset during the pendency of his bankruptcy.  Plaintiff knew he had a duty to

22  disclose insurance claims as he originally reported an insurance claim for a stolen motorcycle.

23  Moreover, plaintiff knew he had a duty to amend the schedule to include new claims as he added

24  another insurance claim in his November 27, 2012 amendment.  Because plaintiff did not disclose

25  the burglary or the instant State Farm claim prior to dismissal, the first element has been met.

26  **B.   <u>Plaintiff Convinced The Bankruptcy Court To Accept His Prior Position</u>**

27         A bankruptcy court's confirmation of the debtor's reorganization plan is an acceptance of a

28  debtor's nondisclosure as true, and thus satisfies the second element of judicial estoppel. *Hamilton v.*

770311                                     - 14 -

1  *State Farm Fire & Cas. Co*, 270 F.3d 778, 783 (9th Cir. 2001) ("In the bankruptcy context, a party is

2  judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise

3  mentioned in the debtor's schedules or disclosure statements."); *Oneida Motor Freight, Inc. v.*

4  *United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir.), *cert. denied*, 488 U.S. 967 (1988) (debtor estopped

5  for failing to disclose his potential claims against a creditor in his bankruptcy because his failure

6  "worked in opposition to preservation of the integrity of the system which the doctrine of judicial

7  estoppel seeks to protect"); *see also Hamilton v. Greenwich Investors XXVI, LLC*, 195 Cal.App.4th

8  1602, 1609 (2011), as modified (June 15, 2011).

9  　　　　Plaintiff received a modified Chapter 13 Plan on December 16, 2013, without having

10  disclosed his November 2013 homeowner's claim.  Plaintiff also failed to disclose this April 2014

11  homeowner's claim during his bankruptcy.  Because the Bankruptcy court granted plaintiff's plan

12  modification, and plaintiff failed to notify the court of any of his State Farm claims, the Bankruptcy

13  court accepted plaintiff's nondisclosures as true.  Thus, the second element has been satisfied.

14  **C.**　　**Plaintiff Would Derive An Unfair Benefit If This Claim Is Not Judicially Estopped**

15  　　　　A debtor must disclose potential claims from commencement to discharge so that the

16  bankruptcy court, trustee, and creditors can evaluate changes in the debtor's ability to repay his

17  obligations.  "At any time after confirmation of the plan but before the completion of payments under

18  such plan, the plan may be modified, upon request of the … holder of an allowed unsecured claim, to

19  increase or reduce the amount of payments on claims of a particular class provided for by the plan."

20  11 U.S.C. § 1329.  Modification is based on the premise that, during the life of the plan,

21  circumstances may change, and parties should have the ability to modify the plan accordingly.  *In re*

22  *Taylor*, 215 B.R. 882, 883 (S.D.Cal.1997).

23  　　　　A debtor's failure to disclose a potential claim that accrues prior to discharge robs creditors

24  of the ability to rely on disclosures in making decisions during the bankruptcy.  "Congress did not

25  intend for debtors who experience substantially improved financial conditions after confirmation to

26  avoid paying more to their creditors."  *Arnold v. Weast,* 869 F.2d 240, 242 (4th Cir.1989).

27  　　　　Plaintiff would derive an unfair benefit if this action is not judicially estopped.  On December

28  16, 2013, the Bankruptcy Court approved plaintiff's modified Chapter 13 Plan.  RJN, ¶ 1, p. 123.

770311                                            - 15 -

1  Plaintiff was permitted to make reduced payments of $200 per month beginning November 2013 for

2  six months, and resume his original plan payment of $2,050 per month beginning May 2014, after

3  the loss.  *Id.*  Not only were plaintiff's creditors denied full recovery, his failure to amend deprived

4  them of their right to rely on truthful disclosure in deciding whether to file a proof of claim before

5  the proceeding was dismissed in December 2014.

6      All three factors have been met, and in the interests of equity, the court must judicially estop

7  plaintiff from asserting this claim against State Farm.

8  ## V.  PLAINTIFF'S MATERIAL MISREPRESENTATIONS MANDATE SUMMARY JUDGMENT FOR STATE FARM

9      An insured's material misrepresentation in the presentation of a claim vitiates coverage and

10  legally excuses any alleged non-payment by the insurer.  *Cummings v. Fire Ins. Exch.,* 202

11  Cal.App.3d 1407, 1418-1419 (1988); *Perovic v. Glens Falls Ins. Co.* 401 F.2d 145 (9th Cir. 1968).

12  In the insurance context, a misrepresentation is a "false answer as to any matter of fact, material to

13  the inquiry, knowingly and willfully made, with intent to deceive the insurer." *Id.* at 1416-1417.

14  The insurer does not have to prove intent to defraud.  Intent to defraud is "necessarily implied when

15  the misrepresentation is material and the insured willfully makes it with knowledge of its falsity."

16  *Ram v. Infinity Select Ins.* 807 F.Supp.2d 843, 853 (N.D.Cal. 2011); *see also Essex Ins. Co. v.*

17  *Hartford Fire Ins. Co.,* 2013 WL 3389549 *7 (C.D.Cal. 2013).  "[I]f the misrepresentation concerns

18  a subject reasonably relevant to the insurer's investigation, and if a reasonable insurer would attach

19  importance to the fact misrepresented, then it is material." *Id.* at 1417; *Fine v. Bellefonte*

20  *Underwriters Ins. Co.* 725 F.2d 179, 182-183 (2nd Cir. 1984).

21      Whether a misrepresentation was "material" to the contract can be determined as a matter of

22  law.  *Cummings v. Fire Ins. Exch., supra,* 202 Cal.App.3d at 1417; *Fine v. Bellefonte Underwriters*

23  *Ins. Co., supra,* 725 F.2d 179, 182-183 (the materiality of a statement is sometimes regarded as a

24  pure question of law and sometimes regarded as a mixed question of law and fact).

25      An insured's false testimony will defeat his breach of contract claim against the insurer:

26          The object of the provisions in the policies of insurance, requiring the
           assured to submit himself to an examination ... was to enable the company
27          to possess itself of all knowledge, and all information as to other sources
           and means of knowledge, in regard to the facts, material to its rights, to
28          enable it to decide upon its obligations, and to protect it against false

770311                                    - 16 -

claims. And every interrogatory that was relevant and pertinent in such an examination was material, in the sense that a true answer to it was of the substance of the obligation of the assured. A false answer as to any matter of fact, material to the inquiry, knowingly and willfully made, with intent to deceive the insurer, would be fraudulent. ... And if the matter were material and the statement false, to the knowledge of the party making it, and willfully made, *the intention to deceive the insurer would be necessarily implied, for the law presumes every man to intend the natural consequences of his acts.* Claflin v. Commonwealth Insurance Co., 110 U.S. 81, 28, 3 S.Ct. 507 (1884) (emphasis added).

California courts have applied this rationale to address the impact of the materiality of false statements. *Cummings, supra,* 202 Cal.App.3d at 1417 (citing *Claflin*).

Where a representation is false in a material point, "the injured party is entitled to rescind the contract from the time the representation becomes false." Ins. Code, § 359.  In *Cummings v. Fire Ins. Exchange*, in her EUO, the plaintiff initially repeated her false version of the occurrence that gave rise to the loss. *Cummings v. Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1413. "[H]owever, when she was confronted with the information which defendant's investigation had uncovered, she changed her story and finally gave a true accounting of the vandalism to her home." *Cummings, supra,* 202 Cal.App.3d at 1413.  The court found that the plaintiff's motive for lying was immaterial. *Cummings, supra,* 202 Cal.App.3d at 1418.  Her false statement on a material point, knowingly made, established her intent to deceive the insurer as a matter of law. *Cummings, supra,* 202 Cal.App.3d at 1417-1418.  Thus, when an insured recants his false statement to the insurer at any point during the investigation of his claim, from that point on, the insurer is entitled to rescind the contract as a matter of law. *Cummings, supra,* 202 Cal.App.3d at 1417-1418.

Here, coverage was vitiated due to plaintiff's numerous material misrepresentations.  Plaintiff represented to State Farm that the stolen items included a Snap On Socket Set that he had acquired in a swap meet in Portland, Oregon, worth $6,000.  Plaintiff later submitted a typed statement documenting the $6,000 sale of the Socket Set purportedly from Brian Tilseth, but Tilseth's name was misspelled as "Tillseth."  Tilseth, however, denied selling any tools to plaintiff, and denied writing a statement that he had sold any to plaintiff.  Plaintiff later told State Farm a completely different story, saying that he had actually traded Tilseth $6,000 worth of marijuana for the tools. State Farm then called Tilseth, who said he needed to recant his statement.  Tilseth confirmed the

marijuana – socket set trade. Tilseth denied typing the statement that plaintiff submitted to State Farm in his claim. In his EUO, plaintiff initially reiterated his story about purchasing the socket set in Portland at a swap meet, but later said he had asked Brian Tilseth to type the statement he submitted to State Farm regarding the socket set. Then plaintiff said he did not pay Tilseth $6,000, but rather gave Tilseth two pounds of marijuana. Plaintiff testified that they did not document the trade because they wanted to keep it "undercover." Yet he later submitted a handwritten statement purportedly documenting the exchange. Plaintiff submitted two different receipts for the same tools to State Farm. Then he later submitted a third receipt to Farmers. In other words, ***plaintiff admitted that he twice misrepresented a material fact to State Farm***, i.e. where he got and how he paid for the allegedly stolen socket set.

Just as in *Cummins*, State Farm was entitled to cancel the Policy when plaintiff admitted that the socket set was acquired by marijuana trade, and not by cash sale at a swap meet or from Tilseth as he originally stated. Plaintiff's motive for lying is irrelevant. His false statement on a material point, knowingly made, established his intent to deceive State Farm as a matter of law.

Plaintiff also represented to State Farm that stolen items included a Fender acoustic guitar, valued at $3,250, which he had received as a gift from Jimmy Johnson in Alaska. Plaintiff later represented to State Farm that the guitar was actually a Martin acoustic D45 1942 Dreadnought guitar, gifted to him by Douglas Freitas, and worth $47,999. Plaintiff submitted a typed statement documenting the gift of a Martin guitar purportedly from Freitas, but Freitas' name was misspelled as "Fretus." When questioned in his EUO why he initially reported that a Fender guitar was stolen, plaintiff said that the guitar was actually a Martin guitar in a Fender case. He clarified that there were two guitars, but that the Fender was not stolen. Plaintiff later submitted a claim to Farmers for the same loss, and reported two guitars stolen: a Fender Stratocaster guitar ($900)[3] and a Martin acoustic guitar ($5,300). Plaintiff cannot dispute that he reported owning two guitars to State Farm, and changed his reported loss from the Fender guitar to the Martin acoustic guitar. Further, plaintiff cannot dispute that he claimed two guitars, a Fender Stratocaster and a Martin acoustic guitar, stolen

---

[3] Plaintiff previously claimed the loss of a Fender Stratocaster guitar worth $900 in his November 2013 claim to State Farm.

from the same loss event in his claim to Farmers. Because plaintiff testified in his EUO that he owned two guitars, his claim to Farmers for a Martin and a Fender evinces that plaintiff claimed the same Martin guitar to both insurance companies but at drastically different prices (Farmers: $5,300; State Farm: $47,999). These undisputed facts indicate at the very least that plaintiff significantly overinflated the value of any guitar that was actually stolen.

Plaintiff also cannot dispute that he claimed in the instant loss the same Marshall amplifier that he claimed in his 2013 homeowner's claim to State Farm. Indeed, in both his November 2013 claim and his April 2014 claim, plaintiff submitted the same Guitar Center receipt for the Marshall amplifier purchased for $1,919.99, sales number 2241604872, dated March 22, 2013. Plaintiff cannot dispute that he submitted the same receipt for the Marshall amplifier in both his November 2013 and his April 2014 State Farm claims. Plaintiff thus misrepresented the existence and loss of the Marshall amplifier. Because plaintiff cannot have lost the same Marshall amplifier in both the November 2013 burglary and the April 2014 burglary, plaintiff cannot dispute his material misrepresentation to State Farm.[4]

Plaintiff also cannot dispute that he overinflated the value and misrepresented his acquisition of several other items, including the Husqvarna chainsaw, Tascam recorder, two Snap On impact wrenches, Snap On vac spotter, Snap On air hammer set, Snap On die grinder, and Martin hunting bow. These misrepresentations are evinced by the evidence plaintiff submitted to Farmers for the same loss claim, including two receipts, nearly sequentially numbered but dated June 4, 2013 and July 10, 2013, purportedly from Gino Herrera documenting the sale of these tools, and plaintiff's handwritten list with items, values, and the notation that all items were acquired from Gino Herrera.

Specifically, plaintiff claimed in his EUO that the $460 chainsaw was in the safe that was stolen in the November 2013 loss. However, plaintiff submitted a receipt to Farmers purporting to document Gino Herrera's June 4, 2013 sale of the chainsaw to plaintiff for $200. Similarly, plaintiff reported to the loss of two Snap On impact wrenches that were gifted to him by someone he did not recall, one valued at $1,682 and the other at $1,600. To Farmers, plaintiff claimed two Snap On

---

[4] Plaintiff also repeatedly changed the number and type of amplifiers he claimed stolen, brands including Fender, Ampeg, and Marshall, and quantity ranging from one to four amplifiers.

impact wrenches for $460 and $200, according to the Gino Herrera receipts.  Plaintiff also claimed the Snap On vac spotter was a $1,200 purchase from Portland, Oregon, but did not provide a receipt. However, the Snap On vac spotter was included on the Gino Herrera receipt Farmers received, sold to plaintiff for $400.  To State Farm, plaintiff claimed the Snap On air hammer set was a gift worth $550.  But his Farmers claim reflected that the air hammer set was a $200 purchase from Gino Herrera.  Plaintiff also reported to State Farm that he was gifted the Snap On die grinder, worth $350.  To Farmers, plaintiff reported the die grinder was a $200 purchase from Gino Herrera.  To State Farm, plaintiff claimed a Martin hunting bow he had purchased in Portland, Oregon, for $1,000, but later valued the bow at $710.  However, plaintiff reported to Farmers that the bow was a $200 purchase from Gino Herrera.  Plaintiff also claimed the Tascam recorder was worth $1,600 in an email, but later testified it was only worth $500.  To Farmers, plaintiff claimed it was $460.  This indisputable evidence establishes plaintiff misrepresented both the value and origin of these items.

Plaintiff cannot dispute that these misrepresentations regarding his alleged acquisition and value of the allegedly stolen items are material because this information directly affects the value of his claim and State Farm's liability under the Policy.  Accordingly, misrepresenting the existence or value of any one of the above-listed items entitles State Farm to summary judgment.

## VI.  PLAINTIFF'S BAD FAITH CLAIM FAILS BECAUSE STATE FARM HAD REASONABLE GROUNDS TO DENY HIS CLAIM AS A MATTER OF LAW

If the Court determines that coverage was vitiated due to plaintiff's misrepresentations, his bad faith claim likewise fails.  A bad faith claim fails, as a matter of law, where the insured was not entitled to policy benefits in the first instance.  *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1148-1149 (1990); *Waller v. Truck Insurance Exchange*, 11 Cal.4th 1, 35 (1995).

Moreover, under California law, an insurer only breaches the implied covenant when it withholds policy benefits unreasonably or without proper cause.  *California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 54 (1985).  The *California Shoppers* court explained, "declining to perform a contractual duty under the policy ***with proper cause*** is not a breach of the implied covenant."  *Id.* (emphasis in original).

California law also does not impose bad faith liability on insurance companies for mistakes. *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1166 (9th Cir. 1996) ("In California, mere negligence is

1   not enough to constitute unreasonable behavior and does not establish a breach of the implied

2   covenant of good faith and fair dealing in an insurance case."); *National Life & Accident Ins. Co. v.*

3   *Edward*, 119 Cal.App.3d 326, 339 (1981) (although the insurer's claims handling "may have

4   constituted negligent behavior, it . . . did not constitute a violation of the covenant of fair dealing.")

5   Indeed, to hold an insurer liable for breach of the implied covenant, there must be proof that the

6   insurer *consciously* and *deliberately* deprived the insured of policy benefits. *Century Surety Co. v.*

7   *Polisso*, 139 Cal.App.4th 922, 949 (2006). As the *Polisso* court explained:

8   > There must be proof the insurer failed or refused to discharge its
    > contractual duties not because of an honest mistake, bad judgment, or

9   > negligence, 'but rather **by a conscious and deliberate act**, which unfairly
    > frustrates the agreed common purposes and disappoints the reasonable
    > expectations of the other party thereby depriving that party of the benefits

10  > of the agreement.' *Century Surety Co. v. Polisso, supra* 139 Cal.App.4th
    > at 950. (emphasis added) (quoting *Chateau Chamberay Homeowners*

11  > *Assn. v. Associated Int'l. Ins. Co.,* 90 Cal.App.4th, 335, 346 (2001)).

12  A court must evaluate the insurer's conduct based on the circumstances as they unfolded, not

13  in hindsight: "In evaluating the evidence to see if there was any unreasonable conduct by the

14  Company, it is essential that no hindsight test be applied. The reasonable or unreasonable action by

15  the Company must be measured as of the time it was confronted with a factual situation to which it

16  was called upon to respond." *Austero v. National Casualty Co.*, 84 Cal.App.3d 1, 32 (1978). Also,

17  the court will consider the willingness of an insurer to reevaluate a claim and continue its

18  investigation as evidence of the insurer's reasonableness. *Id.* at 35.

19  Where there is a "genuine dispute" as to the insurer's duty to pay policy benefits, as a matter

20  of law, the insurer does not breach the implied covenant by withholding benefits. *Chateau*

21  *Chamberay Homeowners Assn. v. Associated Int'l. Ins. Co.*, 90 Cal.App.4th 335, 350 (2001).

22  Significantly, if there is a genuine issue as to the insurer's liability, a court can conclude *as a matter*

23  *of law* that the denial of the claim was not unreasonable. *Rappaport-Scott v. Interinsurance*

24  *Exchange of Auto Club*, 146 Cal.App.4th 831 (2007); *see also, Lunsford v. Am. Guar. & Liab. Ins.*

25  *Co.*, 18 F.3d 653, 656 (9th Cir. 1994).

26  The Court may grant summary judgment of an insured's bad faith claim even if the court

27  determines there is a question of fact as to whether the insured made a material misrepresentation in

28  the presentation of the claim. *Chaidez v. Progressive Choice Ins. Co.*, 2013 WL 1935362 *4

770311                                          - 21 -

1  (C.D.Cal. 2013) (citing *Chateau Chamberay*).  If the insurer's investigation was reasonable and it

2  had proper cause to deny the claim based on a perceived misrepresentation as the circumstances

3  unfolded, the insured's bad faith claim will fail as a matter of law.  *Id.*

4      Conduct of the insured and his representatives can also negate a bad faith claim.  Delay,

5  obfuscation, unreasonable demands and other misconduct by the insured or the insured's agents,

6  whether intentional or not, can establish that the insurer acted reasonably under the circumstances.

7  *Kransco v. American Surplus Lines Ins. Co.,* 23 Cal.4th 390, 408, 410-411 (2000).  The insured has

8  the burden to document the amount of the loss, a burden that has been upheld by the courts.  *See*

9  *Abdelhamid v. Fire Ins. Exchang*e, 182 Cal.App.4th 990, 999-1001 (2010); *Community Assisting*

10  *Recovery, Inc. v. Aegis Security Ins. Co.*, 92 Cal.App.4th 886, 892-893 (2001).

11      There are no facts to support plaintiff's claim that State Farm breached the implied covenant

12  of good faith and fair dealing.  Plaintiff cannot dispute that, at a minimum, it was reasonable for

13  State Farm to deny his claim on the grounds of material misrepresentation.  State Farm took recorded

14  statements, interviewed witnesses, attempted to obtain receipts or proof of ownership for allegedly

15  stolen items, and took plaintiff's EUO.  As outlined in detail above, plaintiff's responses to State

16  Farm's questions and the other evidence it obtained revealed misrepresentations, contradictions and

17  inconsistencies in his claim.

18      Plaintiff initially reported to the OPD that only $6,600 in cash was stolen.  In his recorded

19  account to State Farm three days later, plaintiff reported that no musical equipment was stolen, but

20  that some Snap On tools had been taken.  A couple weeks later, plaintiff submitted his sworn

21  Inventory, in which he claimed various items of musical equipment and Snap On tools were stolen,

22  and reported each item's brand, origin, age, and value.

23      Plaintiff's submissions in support of his claim conflicted in numerous ways with his

24  Inventory and initial recorded account to State Farm regarding the acquisition, type, and/or value of

25  items reported.  Plaintiff initially reported that he bought the $6,000 Snap On socket set at a swap

26  meet in Portland.  However, he later admitted that was not true, he bought it from Tilseth, and

27  submitted a typed statement from Tilseth.  After Tilseth denied typing the statement plaintiff

28  admitted that he made a misrepresentation, and that he actually traded the tools for marijuana.  He

1  then submitted an entirely different receipt for the tools, despite testifying at his EUO that there was

2  no receipt because they wanted to keep it "undercover."

3        Plaintiff made another conflicting report regarding the alleged loss of a Fender or Martin

4  guitar.  First, plaintiff claimed the loss of a Fender guitar worth $3,250, which he received from

5  Jimmy Johnson in Alaska.  Later, plaintiff submitted a typed statement purportedly from Douglas

6  "Fretus" confirming the gift of a 1942 Martin Dreadnought acoustic guitar.  The statement appeared

7  identical in format to "Tillseth's" alleged statement, and he admitted both were typed on his

8  computer.  Plaintiff claimed the Martin guitar was worth $47,999.  State Farm learned that Douglas

9  "Fretus" was actually Douglas Freitas, and tried to ask him about the expensive guitar, but he

10  refused.  In plaintiff's EUO, he stated that he had owned two guitars, a Fender and a Martin.

11  Plaintiff explained that he had thought the Fender was stolen, but it was really the Martin in a Fender

12  case, even though he said he played the Martin on a regular basis.

13        Plaintiff also submitted two conflicting estimates from Security "Inovations" for door repairs.

14  Yet "Ronil C", who turned out to be Ronil Bahadur, told State Farm he only gave plaintiff one

15  estimate. There was also confusion regarding whether the damage was preexisting from the prior

16  November 2013 loss.  Nonetheless, State Farm paid plaintiff for the damage.

17        Plaintiff also failed to provide documentation for several high-value items claimed stolen in

18  his sworn Inventory, including the two Snap On impact wrenches ($1,600 and $1,200), Snap On die

19  grinder ($350), Snap On air hammer set ($550), Snap On vac spotter ($1,200), Husqvarna chainsaw

20  ($600), and Roland electric drum ($4,000).

21        In addition, plaintiff repeatedly changed his report of the quantity and brand of amplifiers

22  stolen, and even submitted the same receipt for a Marshall amplifier that he had claimed, and was

23  paid for, in his November 2013 loss.  Plaintiff's inconsistent accounts of stolen amplifiers and his

24  claim of an amplifier that he had reported stolen in a prior loss raised the question of whether any of

25  the items plaintiff claimed in fact existed or were actually stolen.  Plaintiff cannot dispute that his

26  conduct raised the question of whether he intentionally concealed or misrepresented material facts or

27  circumstances during the investigation of his claim.

28        Plaintiff's failure to include in his bankruptcy filing items he alleged stolen to State Farm

1   presented another inconsistency.  If plaintiff had owned the items, he had an obligation to report

2   them in his bankruptcy Personal Property Schedule B.  Yet in his EUO, plaintiff admitted that his

3   bankruptcy did not account for the items allegedly stolen.

4         State Farm was entitled to pursue these and other material issues during its investigation,

5   which as it continued, revealed facts and circumstances casting substantial doubt on whether the

6   musical equipment and tools, including a $47,999 Martin Guitar and $11,500 worth of tools, were in

7   fact stolen.  At a minimum, the numerous material misrepresentations, inconsistencies and

8   contradictions raised a genuine dispute over the value of plaintiff's claim, rendering denial of the

9   claim reasonable.

10        Because plaintiff cannot dispute that State Farm's denial was reasonable, his bad faith claim

11   fails as a matter of law.

12   **VII.  PLAINTIFF'S PUNITIVE DAMAGE CLAIM FAILS AS A MATTER OF LAW**

13        A claim for punitive damages requires plaintiff to prove by *clear and convincing evidence*

14   that State Farm has been guilty of malice, fraud or oppression.  Cal. Civ. Code § 3294.  "Clear and

15   convincing evidence" consists of evidence "so clear as to leave no substantial doubt" and

16   "sufficiently strong to command the unhesitating assent of every reasonable mind."  *In Re Angela P.*,

17   28 Cal.3d 908, 919 (1981).  "The law does not favor punitive damages and they should be granted

18   with the greatest caution."  *Beck v. State Farm Mut. Auto. Ins. Co.*, 54 Cal.App.3d 347, 355 (1976).

19   Thus, in ruling on a motion for summary judgment a claim for punitive damages, the court must

20   evaluate whether the evidence submitted by the opposition constitutes *clear and convincing evidence*

21   pursuant to the higher burden of proof for such a claim.  *Reader's Digest Ass'n v. Superior Court*, 37

22   Cal.3d 244, 252 (1984); *Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112, 1118-1119 (2001).  Where

23   the plaintiff fails to submit clear and convincing evidence of malice, fraud or oppression, the court

24   must summarily adjudicate the punitive damages claim in the defendant's favor, *even if the court*

25   *concludes there is a triable issue of fact on the bad faith claim.  Basich, supra*, at 1118-1122.

26        In a bad faith action, evidence that the insurer has violated its duty of good faith and fair

27   dealing does not alone establish that it acted with the requisite intent to justify an award of punitive

28   damages.  *Patrick v. Maryland Casualty Co.*, 217 Cal.App.3d 1566, 1575 (1990); *Mock v. Mich.*

770311

1   *Millers Mut. Ins. Co.*, 4 Cal.App.4th 306, 328 (1992).  To establish that an insurer's conduct has

2   gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by *clear and*

3   *convincing evidence* that the insurer acted maliciously, oppressively or fraudulently.  *Mock v. Mich.*

4   *Millers Mut. Ins. Co., supra*, 4 Cal.App.4th at 328.  Even overzealous and callous claims handling

5   will not warrant punitive damages if it falls short of being malicious or despicable:

6           In summation, the actions of [Transamerica] may be found to be negligent
        (failing to follow-up information provided by the insured), overzealous

7       (taking an unnecessary deposition under oath of the insured), legally
        erroneous (relying on an endorsement which was not shown to have been

8       delivered), and callous (failing to communicate).  There is nothing done,
        however, which could be described as evil, criminal, recklessly indifferent

9       to the rights of the insured, or with a vexatious intention to injure.  There
        is simply no evidence supporting a punitive damages award in this case,

10      and the award must be reversed in its entirety.  *Tomaselli v. Transamerica*
        *Ins. Co.,* 25 Cal.App.4th 1269, 1288 n. 14 (1994).

11          Plaintiff does not have any evidence, let alone clear and convincing evidence, that State Farm

12  acted with fraud, malice or oppression during the handling of his claim.  As outlined above, State

13  Farm promptly investigated the claim and reasonably determined that plaintiff made material

14  misrepresentations regarding where he got and how he paid for the allegedly stolen property.  Under

15  the circumstances of this case, plaintiff's claim for punitive damages fails as a matter of law.  Thus,

16  at a minimum, State Farm is entitled to partial summary judgment of plaintiff's punitive claim.

17                            **VIII.  CONCLUSION**

18          Because plaintiff admitted that he made material misrepresentations during his claim, State

19  Farm is entitled to summary judgment as a matter of law.  Moreover, plaintiff's claim is estopped

20  because he failed to advise the Bankruptcy Court of it.  At a minimum, plaintiff's bad faith and

21  punitive claims fail.  Therefore, State Farm respectfully requests that the Court grant its motion for

22  summary judgment, or in the alternative, partial summary judgment.

23  Dated:  April 24, 2017              HAYES SCOTT BONINO ELLINGSON & MCLAY, LLP

24

25                            By:  _____/S/ Jamie A. Radack_____
                                  STEPHEN M. HAYES
                                  STEPHEN P. ELLINGSON
26                                JAMIE A. RADACK
                                  NICOLE C. WEBSTER
27                                Attorneys for Defendant
                                  STATE FARM GENERAL INSURANCE COMPANY
28

770311                              - 25 -