JOHN T. BELL, SBN 209941
Law Offices of John T. Bell
151 Callan Avenue, Suite 102
San Leandro, CA 94577
TEL: 510-895-4044
FAX: 510-895-4077

Attorney for Plaintiff Floyd Castro

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FLOYD CASTRO<br><br>Plaintiff,<br>vs.<br><br>STATE FARM GENERAL INSURANCE COMPANY AND DOES 1 through 10 INCLUSIVE,<br><br>Defendants. | Case No. 4:15-cv-05728 WHO<br><br>**DECLARATION OF PLAINTIFF FLOYD CASTRO**<br><br>**Date:** **May 31, 2017**<br>**Time:** **2:00 p.m.**<br>**Ctrm:** **2, 17th Floor**<br>**Judge:** **Hon. William H. Orrick** |

I, Floyd Castro, declare:

1. I am the plaintiff in this action and if called upon to testify and can testify competently on all matters herein.

2. In November 1981, I was involved in a serious car accident. As a result of the accident, I had to have two separate head surgeries. Since the surgery, I have a difficult time recalling things. There is a significant difference between my memory before and after the surgeries. I suffer from a traumatic brain injury.

3. In 2013, I was attacked at the Fruitvale BART station in Oakland, California. I was beaten in the head with a pistol. The attack exacerbated my ability to remember and recall things.

4. I never knowingly and willfully made any material misrepresentations to State Farm doing the claims process. If I made a misrepresentation to State Farm, then it was due to my traumatic brain injury.

5. On April 20, 2014, my home in Oakland was burglarized by unknown assailants. I immediately reported the crime to the Oakland Police Department ("OPD). OPD did not send an officer out to my home to investigate the burglary. I made at least two "online" follow-up reports to OPD with respect to things that were missing from home. With respect to the online reports, there was a very limited amount of space for a person to list all of their stolen items. When I made my reports, I was not completely aware of all the things that were missing from my home. I initially thought that the thieves had only taken cash from my home because I had not inspected the other rooms in my home.

6. After reporting the burglary to OPD, I called State Farm to report the burglary and to open a claim.

7. On April 23, 2014, out of the blue, I received a telephone call from a State Farm adjuster. The adjuster informed me that she wanted to take a recorded statement from me. **(Ex. A)** I agreed to have my statement recorded. I told the adjuster that as far as I could tell the burglars stole $6,500.00 in cash and bunch of my tools. I informed the adjuster that I had significant memory problems because of two prior brain surgeries. The adjuster asked whether or not" any of[ my music equipment was missing? I initially told her no but **while on the**

**telephone, I discovered that my PA system was missing. I specifically told her the following: "oh son of a bitch they did take a PA system, they took a Mackie PA system."** **(Ex. A,** pg. 22:5-8) Prior to that statement, I was unaware that he PA system was missing. I was still in shock and had not conducted an inventory of all the things that were taken from my home. Over the years, I have accumulated a lot of things and it is and was hard for me to know exactly what was missing from my home, the date I purchased the items, the value paid for the items, etc. This problem is compounded due to my traumatic brain injury.

8. On August 1, 2014, out of the blue again, I received another telephone call from a State Farm adjuster, Ms. Hernandez. The adjuster wanted me to submit to a second recorded statement. **(Ex. B)** I agreed to have my statement recorded again by State Farm. However, I thought it was odd. Again, I told the adjuster that I have serious memory issues. Among other things, I told the adjuster that I had filed a petition for bankruptcy in 2012. I informed the adjuster that prior to 2012, I had never filed for bankruptcy and maybe there were unintentional mistakes in my petition, because I just didn't know I had to include my musical equipment. **(Ex. B,** pg, 18:1-25). Ms. Hernandez told me that she would help me with my bankruptcy petition and if there was anything that I need to do to be in compliance, then she would inform me. **(Ex B.**, pg. 24:20-25, pg. 25:1-5). Ms. Hernandez told me that she would get back with me within one week to let me know what I needed to do with my bankruptcy petition. **(Ex B.,** pg. 25:1-3**)** I never heard back from Ms. Hernandez so I assumed that everything was ok. I was happy, but somewhat suspicious, that my insurance company was working with me to resolve the claim and was going to assist me with my bankruptcy matter.

9. Prior to my bankruptcy petition being dismissed by the court, I provide my bankruptcy attorney with additional information so that he could amend my petition. It was my

understanding that additional information was added to my petition. My bankruptcy attorney provided me with an updated (amended Schedule B - Personal Property). **(Ex. D)** I assumed that my bankruptcy attorney had filed the amended document prior to my petition being dismissed by the court. I provided State Farm with a copy of the amended document.

10. State Farm made the claim's process very difficult and confusing. I would provide State Farm with documents in support of my claim and after providing State Farm with documents in support of my claim, State Farm would request more documents. For example, State Farm instructed me to get all of my receipts from the Guitar Center, because a lot of my musical equipment had been purchased from the Guitar Center. After retrieving the receipts from the Guitar Center, I gave them to State Farm. The receipts that I gave to State Farm may have included a receipt for a Marshall amplifier that was part of a previous claim. I was unaware that it was the same receipt. I thought it was a receipt for different Marshall amplifier. I have several amplifiers.

11. I purchased a tool set from Brian Tilseth that was valued at $6,000.00. I gave Mr. Tilseth $6,000.00 worth of marijuana in exchange for the tool set. Mr. Tilseth provided me with a receipt. Mr. Tilseth is no longer alive and State Farm is aware of that fact.

12. I received a Martin guitar from Douglas Freitas. At time of receipt I did not know the true value of the guitar and I suspect that Mr. Freitas did not know the true value of the guitar as well. I discovered the true value of the guitar when I called the Martin Guitar Company or the

\\\

\\\

\\\

\\\

Guitar Center after being instructed by State Farm to provide it with the value of my losses.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: May 5, 2017

Floyd Castro