UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLOYD CASTRO,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE FARM GENERAL INSURANCE COMPANY,<br><br>    Defendant. | Case No. 15-cv-05728-WHO<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 26 |

Plaintiff Floyd Castro submitted a homeowner's insurance claim to State Farm following the burglary of his home in April 2014, claiming that a significant amount of cash, a number of expensive tools and expensive musical equipment were stolen. State Farm denied the claim and voided Castro's policy under its Concealment and Fraud provision because of Castro's multiple material misrepresentations about the value and source of the stolen tools and equipment.[1] It now moves for summary judgment, or partial summary judgment, because its conduct was justified. Castro opposes because any misrepresentations are explained by plaintiff's memory problems, of which State Farm was fully aware. Indeed, he argues that State Farm's investigation was conducted in bad faith because, having knowledge of Castro's memory problems, it should have sent him for an Independent Medical Exam prior to denying his claim for misrepresentations. Castro's misrepresentations were numerous and material, and he introduced no evidence of memory issues that a reasonable jury would find as an excuse for his obviously false and inconsistent submissions. I GRANT State Farm's motion.

---

[1] State Farm also argues that because in Castro's bankruptcy proceedings (pending from 2012 through 2014), Castro failed to disclose the existence of the State Farm claim he should be prevented from pursuing this suit under the doctrine of judicial estoppel. I do not need to reach this argument.

**BACKGROUND**

On April 20, 2014, Castro's home was burglarized. Declaration of Floyd Castro [Dkt. No. 33-1] ¶ 5. He reported the burglary to the police. He made at least two online reports to the police department about items that were stolen from his home. Castro Decl. ¶ 5.

Castro had a homeowner's insurance policy with State Farm (the "Policy"), and opened a claim on April 21, 2014. On April 23, 2014, Castro gave a recorded statement to State Farm indicating that tools were stolen from his garage, $6500 in cash was taken, and at least one piece of musical equipment (a PA system) was stolen. April Statement, Ex. A. to the Declaration of John T. Bell [Dkt. No. 33-2] at 7:6-10; Declaration of Maria Okino [Dkt. No. 27] at 22:5-8. In early May 2014, he submitted a "Personal Property Inventory – Customer Worksheet" listing the following items (as relevant to this motion) as stolen: (1) Husqvarna chain saw, purchased at Sears and valued at $600; (2) Tascam recorder, purchased online and valued at $500; (3) socket set, purchased in Portland and valued at $6,000; (4) Martin hunting bow, purchased in Portland and valued at $1,000; (5) a Mackie PA system, purchased at Guitar Center and valued at $1,100; and (6) a fender acoustic guitar, given as a gift and valued at $3,250. Okino Decl., Ex. 5.

During this general time frame, State Farm had a number of contacts with Castro, asking for receipts and other proofs of payment for the stolen items. *See, e.g.*, Okino Decl., Exs. 12-13. State Farm attempted to get more information about some of the musical equipment that was lost, to figure out the exact versions, purchase dates, and purchase prices. *See, e.g.*, Ex. 13. On June 26, 2014, Castro reaffirmed his belief that the stolen guitar was a fender, that it retailed for $3,000, and that it was gifted to him by "Jimmy Johnson" who was working in Alaska. Ex. 13. Shortly thereafter, he changed his claim, asserting that the stolen guitar was a Martin guitar in a Fender case (which is why he thought it was a Fender), and was valued at $47,999. Okino Decl., Exs. 15-16. On June 28, 2014, he sent State Farm an email "as to" the Tascam recorder identifying the model he believed it was and stating that it sells for $1600. Okino Decl., Ex. 12.

On June 30, 2014, State Farm paid Castro $4,789.75 for repairs Castro had to make to doors damaged during the burglary. Okino Decl., Ex. 14. It also informed him that more information was needed as to the Tascam recorder, the socket set, and other items. *Id.* On July 1,

2

2014, Castro submitted a supplemental report to the police department listing additional stolen items and provided a copy to State Farm. Okino Decl., Ex. 15. That list included three Marshal amps and cabinets with speakers and the Martin guitar. *Id.* On July 15, 2014, Castro provided State Farm with an unsigned and undated typed note addressed "to State Farm" allegedly from "Doug Fretus"[2] stating that Freitas gave Castro a Martin D45 Authentic 1942 Dreadnaught Acoustic guitar. Okino Decl. Ex. 16. The note also included a phone number for Freitas and Castro's claim number. *Id.* On the same day, Castro forwarded to State Farm an unsigned typed note "to State Farm" allegedly from Brian "Tillseth," indicating that Tilseth sold Castro a Snap On socket set on May 12, 2011 for $6,000. *Id.*[3] The note included Tilseth's phone number and Castro's claim number. *Id.* State Farm was concerned about the authenticity of these notes because they looked to have been drafted by the "same person/printer." Okino Decl., Ex. 23.

On July 18, 2014, State Farm informed Castro that it needed a copy of his revised police report and more documentation regarding the Tascam recorder, the socket set, amplifiers, and the "Fender Acoustic guitar." Okino Decl., Ex. 17. On July 22, 2014, State Farm performed an online search and found that Castro had made a prior homeowners insurance policy claim for stolen items in November 2013 and had made numerous claims over the past years, some of which had been referred for further investigation because of suspected fraud. Okino Decl., Ex. 18.

State Farm took a second recorded call statement from Castro on August 1, 2014. August Statement, Ex. B. to Bell Declaration; Ex. 20 to the Okino Decl. In that call, Castro confirmed that he lost at least three Marshall amps and three cabinets, as well as the Mackie PA system. August Statement at 8:6-9:20, 18:13. Castro stated that although he had filed a bankruptcy petition in 2012, he did not list any of the items he claimed were stolen in April 2014 on his personal property schedules filed with his bankruptcy petition because he did not know he was supposed to. *Id.* at 18:7 – 19:3. The State Farm agent explained that Castro might want to reopen his

---

[2] Through an Accurint report, State Farm determined that Freitas was the correct spelling of the last name. Okino Decl., Ex. 40 at 313.

[3] Later, in a recorded statement, Tilseth clarified his last name was spelled Tilseth, not "Tillseth" as on the typed note.

3

bankruptcy petition to disclose those items, because if they were not included on Castro's petition then State Farm would not be able to include those items in this claim. *Id.* 19:20 – 20:13. In closing, the State Farm agent indicated he would continue to investigate the claim and would "check on the bankruptcy, um, issue as well. Just again check whether or not they need anything updated on the bankruptcy or not. . . . I hope to get back in touch with you, ah, next week with, you know, the information with regard to the bankruptcy . . . ." August Statement at 24:21 – 25:3. Castro took that as an indication that unless he heard back from the agent, he did not need to do anything with respect to his bankruptcy petition. Castro Decl. ¶ 8. However, in an August 18, 2014 letter, Castro was informed that he should contact the bankruptcy trustee and his bankruptcy attorney because the property for which he was claiming a loss was not disclosed on his bankruptcy schedules. Okino Decl., Ex. 25.[4]

On August 5, 2014, a State Farm agent contacted Doug Freitas. Freitas admitted giving Castro a Martin guitar, but said that he was too busy to talk and asked the agent to call back. Okino Decl., Ex. 21. The agent was never able to reach Freitas again. Okino Decl., Ex. 40 at 313.

Given the inconsistencies in Castro's testimony and the failure to secure accurate responses regarding the source and value of a number of the items, and because it appeared that he was seeking recovery for property (including a Marshal amp) for which he had sought coverage in his prior State Farm claim (from the November 2013 robbery), State Farm initiated a review for potential fraud. Okino Decl., Ex. 23. In an August 18, 2014 letter to Castro, State Farm explained that it was concerned because there was (i) insufficient clarity on which amps were stolen in 2014 and which receipts submitted to State Farm covered the items for which he was currently seeking coverage and (ii) inadequate proof of the $6000 payment to Tilseth for the socket set. *Id.*

On August 27, 2014, State Farm recorded a call with Brian Tilseth. Okino Decl., Ex. 26.[5]

---

[4] In late October, Castro had his bankruptcy attorney prepare (and on November 1, 2014, Castro signed) amended schedules including as assets the items Castro claimed were stolen. Okino Decl., Exs. 24, 34. Castro believes that these amendments were filed before his bankruptcy proceedings were terminated. Castro Decl. ¶ 9. However, Castro's bankruptcy action was terminated on October 31, 2014, as a result of Castro's default in making Chapter 13 plan payments. Okino Decl., Ex. 35.

[5] Tilseth spelled his name on the call, clarifying that it was Tilseth not Tillseth, as represented on

4

Tilseth said he did not know where Castro had gotten his tools. *Id*. at 10:13-11:2. According to the agent's notes, Tilseth told the agent that he had never sold Castro any tools and never gave Castro a written statement of what he sold or gave to Castro. Okino Decl., Ex. 27 at 194. Following the calls to Tilseth and Freitas, Castro called the State Farm agent to question why State Farm was "riding" his friends about the claim. *Id*. at 193. When questioned about the tools, Castro indicated that Tilseth "wrote the [typed] note" about the sale of the socket set for $6,000 (although Tilseth's name was misspelled). *Id*. State Farm told Castro that Tilseth had informed them that he had not sold Castro any tools and had not provided any written statement, creating inconsistencies and implicating the Concealment and Fraud provision of the Policy. *Id*.[6] State Farm also asked Castro whether Castro also wrote the computer note from Doug Freitas regarding the Martin guitar, noting that Freitas' name was spelled incorrectly on the note. *Id*. State Farm informed Castro that it intended to notice an Examination Under Oath ("EUO").

On August 29, 2014, Castro called State Farm and informed them that Tilseth was confused and that Tilseth had in fact sold Castro the tools for $6,000 worth of marijuana, which could be confirmed by Tilseth. Okino Decl., Ex. 28. The agent called Tilseth, who "recanted" some of his prior statements, admitted selling Castro the tools for two pounds of marijuana, stated that he typed up a receipt for the trade for Castro when the sale was made two years ago, and denied writing up "the statement." *Id*.[7]

On September 8, 2014, State Farm informed Castro in writing of the inconsistencies in his claim, including the source and cost of the socket tools and whether a legitimate receipt existed for the purchase from Tilseth to Castro, and the quality, brands and the source of amps that were lost

---

the typed statement submitted by Castro. *Id*.

[6] In the State Farm Homeowners Policy at issue, the "Conditions" provide that: "2. Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance whether before or after a loss." Declaration of Maria Okino [Dkt. No. 27] ¶ 6, Ex. 1 at 32 ("Policy").

[7] The typed note presented by Castro to State Farm allegedly from "Tillseth" was addressed "To State Farm;" it could not have been typed at the time of the sale but was necessarily typed *after* the State Farm claim was opened. Okino Decl., Ex. 16.

5

as a result of the April 2014 burglary (as opposed to the prior burglary and prior claim processed from November 2013), and stated that those concerns raised questions whether the Concealment or Fraud provision of the Policy applied. Okino Decl., Ex. 29.[8] An EUO was scheduled for Tuesday September 30, 2017, and Castro was asked to bring documentation regarding his losses. Okino Decl., Ex. 30.

In his EUO, Castro provided additional testimony regarding the origin of a number of items. As to the Martin guitar, Castro testified that although he played the guitar once or twice a week, he did not realize that the Martin guitar was stolen because it was kept in a Fender case. Okino Decl., Ex. 31 ("EUO Tr.") at 88:14 – 89:16; 93:9 – 94:22. Castro also testified that Freitas prepared the typewritten statement at Castro's house on Castro's computer. *Id.* at 107:20 – 108:3. Castro was not asked about the misspelling of Freitas's name on the receipt. As to the socket set, Castro first affirmed that the set was purchased at a Portland swap meet, as he listed on the original State Farm inventory of stolen items. *Id.* 81:7-17. He later testified that in fact he had given Tilseth $6,000 of marijuana for the set and that Tilseth typed up the receipt presented to State Farm by Castro on the computer at Castro's house. *Id.* 106:3- 107:16; 108:4-6.

As to the amplifiers, Castro clarified that although at some points he had claimed three Marshall amps and cabinets were stolen, he was now claiming only one Marshall amp and cabinet was stolen as well as one Ampeg amp and cabinet, and one Fender amp. *Id.* 97:10 - 98:17. As to the Husqvarna chainsaw, Castro testified that the receipt for it was stolen in the prior November 2013 burglary. *Id.* at 78:5-19. As to the Tascam recorder, he agreed with his initial inventory that it was worth $500 and purchased online, but did not mention his prior email to State Farm claiming it was valued at $1,600. *Id.* at 78:23 – 79:12; *see also* Okino Decl., Ex. 12.

On October 20, 2014, Castro submitted for the first time a handwritten "Bill of Sale" dated January 2012 stating that he and Brian Tilseth traded a socket set for marijuana worth around $6,000. Okino Decl., Ex. 32.

In early 2015, State Farm concluded its investigation and decided to deny the claim and

---

[8] There were a number of other inconsistencies alleged regarding cost of repairs and damage to doors and windows that are not at issue on this motion.

void the Policy under the Concealment and Fraud provision because of Castro's shifting explanations regarding the source and value of a number of items, as well as the inconsistencies in the documents he provided (*e.g.*, the various different receipts with misspelled names). Okino Decl., Ex. 40. State Farm also relied on Castro's failure to include the items for which he sought coverage as assets in his bankruptcy schedules, at least not until the State Farm agent pointed it out as a problem. By letters dated February 13, 2015 and March 3, 2015, State Farm denied the claim, refunded Castro's premium payments, and voided the Policy. Okino Decl., Exs. 42, 43.

Castro filed suit against State Farm for breach of contract and breach of the duty of good faith and fair dealing in state court on May 22, 2015. Dkt. No. 1. After State Farm was served in November 2015, it removed the case to this Court on December 14, 2105. *Id*. After the inception of this litigation, State Farm subpoenaed the production of claims files from Farmers Insurance Company, Inc. Okino Decl., Ex. 45. These records showed that Castro submitted a claim to Farmer's in 2015 for the same April 2014 burglary ("Farmer's Claim") as was the subject of the State Farm claim. *Id*. at 351 – 369. In the Farmer's Claim, Castro sought coverage for some of the same items of property at issue here, but valued them differently. For example, in the Farmer's Claim Castro valued the socket set at $400 (not $6,000), the chainsaw at $200 (not $600), a "gifted" Martin guitar for $200, later revised to $5,300 (not $47,999), the Tascam recorder at $460 (not $500 and later $1,600), and the Martin hunting bow for $200 (not $1,000). *Id*. at 354, 360, 362, 363. Castro also claimed that the socket set and chainsaw were purchased from Gino Herrera, not from Tilseth and the Portland swap meet as asserted here. *Id*. 363.[9]

Castro states that he suffers from traumatic brain injury and had two brain operations as a result of a motorcycle accident in 1981. Castro Decl. ¶ 2. He also suffered a head injury during an assault in 2013, which exacerbated his ability to recall and recollect things. *Id*. ¶ 3.[10] He

---

[9] Castro objects to the Farmer's Claim evidence as hearsay. Oppo. 1. However, these documents were secured with a subpoena and produced pursuant to a custodian of records declaration as official business records. They fall within the business records hearsay exception. Fed. R. Evid. 803(6).

[10] State Farm objects to two portions of Castro's declaration, where Castro explains what he told the State Farm agents in the April and August recorded statements on the basis of hearsay. Reply 2. Because the actual transcripts of those recorded statements, capturing the conversation between

7

informed the State Farm claims adjuster in his April and August statements of his two brain surgeries. April Statement at 16:7-8; August Statement at 22:19. During his August 1 statement, Castro attributed some of his difficulty in remembering to his brain surgeries. August Statement at 22:23-25, 23:1-2. At the October 8, 2014 EUO, he informed State Farm's attorney that he was having problems recollecting due to his severe head trauma, including the more recent 2013 attack. Ex. C to Bell Decl. & Ex. 31 to Okino Decl., EUO Tr. at 30:15-19, 31:7-10. However, he also testified that he has not been diagnosed by any doctor or medical professional with any memory disorder, had not sought treatment in the last 12 months for memory issues, had not lost any job positions because of inability to conduct work in the last two years, and that the 2013 injury affected his ability to remember things "prior to" 2013. *Id*. at 31:20 - 33:13. Castro claims that he never "knowingly and willfully" made any material misrepresentations to State Farm during the claims process and blames any misrepresentations on his traumatic brain injury. Castro Decl. ¶ 4.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the

---

the two parties are otherwise in the record (Okino Exs. 2 & 20), offered by both sides, not objected to, and therefore, party admissions, I overrule the objections. However, pursuant to Federal Rule of Evidence 1002, I will refer to the transcript of what was said instead of Castro's recollection.

8

non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

**DISCUSSION**

**I.     MATERIAL MISREPRESENTATIONS TO STATE FARM**

State Farm argues that Castro's undisputed misrepresentations concerning the source, value, and specifics of the stolen items gave it grounds to deny the claim and void the Policy under the Concealment and Fraud provision. "Generally, the issue of whether the insured's false statement was knowingly and intentionally made with knowledge of its falsity and with intent of defrauding the insurer is a question of fact." *Cummings v. Fire Ins. Exch.*, 202 Cal. App. 3d 1407, 1417 (Cal. Ct. App. 1988).[11] However, "intent to defraud the insurer is necessarily implied when the misrepresentation is material and the insured willfully makes it with knowledge of its falsity." *Id.* at 1418.

State Farm highlights the following inconsistencies and misrepresentations:

<u>The misrepresentations concerning the $6,000 socket set.</u>   State Farm identifies the inconsistent and misleading statements as: (1) Source – Portland swap meet, then Tilseth; (2) Payment – $6,000 in cash to Tilseth, then for two pounds of marijuana to Tilseth; and (3) Proof – the undated typed statement "To State Farm" with Tilseth misspelled indicating the "sale" was in May 2011, then the "Jan 2012" handwritten "Bill of Sale" from Tilseth saying the sale was for two pounds of marijuana, compared with Tilseth first saying that there was no receipt and then admitting to "typing" one up but denying that he prepared any other statement.

Castro attempts to wipe away the impact of his changing explanations, as well as those of Tilseth, by blaming his memory problems due to traumatic brain injuries. Other than Castro's

---

[11] In addition, "materiality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not disagree on the materiality of the misrepresentations." *Cummings*, 202 Cal. App. 3d at 1417.

9

own statements in his declaration that he did not intentionally intend to mislead State Farm and that any misstatements were the result of his memory problems from his traumatic brain injury, there is no evidence that Castro has any memory impairment. He admitted in his EUO that he had not received any diagnosis of a memory impairment, had not sought medical treatment for his traumatic brain injury or memory impairment in past 12 months, and had not lost any job opportunities because of it in the past two years.

I do not think that the misstatements as to source and payment have been explained by any alleged lapse of memory. Leaving those aside, there is also the admission that Castro and Tilseth's initial explanation of an exchange of $6,000 in cash for the tools was false, later explained because they did not want to disclose the trade was for marijuana. That might be plausible. But there are also the two unexplained different "receipts" Castro submitted, which *themselves* contain misstatements. Castro makes no effort to explain the origin of these two different statements (when Tilseth denied anything other than typing up a statement at the time of the trade in 2012) or their different representations (as to date and terms). It is one thing to misstate facts when giving testimony because of confusion or mistake. It is another to produce different written receipts that themselves contain material inconsistencies. While memory problems (if they exist) might explain some of the shifting explanations regarding source and lack of recollection as to date or other specifics, that cannot account for the apparent *creation* and submission of different receipts without explanation. State Farm was entitled to invoke the Concealment and Fraud provision to deny the claim and void the Policy on this ground alone.

<u>The misrepresentations concerning the Martin guitar</u>. State Farm identifies the following inconsistencies and misstatements: (1) Identity – first identifying the guitar as a Fender, which Castro admitted he played once or twice a week, and then months later claiming it was a rare Martin guitar which he didn't realize because he kept it in a Fender case; (2) Source/Value – identifying the missing guitar initially as a Fender that was a gift from "Jimmy Johnson" and valued at $3,000 or $3,250, and then as a gift from Doug Freitas and valued at $47,999, with a typed statement (matching the questionable one from Tilseth regarding the socket set) that misspells Freitas' name but, according to Castro, was typed up by Freitas. Castro does nothing to

10

explain the inconsistencies raised by the typed receipt and misspelling of Freitas' name allegedly typed by Freitas on Castro's computer (except mentioning his unsubstantiated memory problems). He did not provide any affirmative evidence (*e.g.,* a declaration from Freitas, information showing the alleged value of the stolen guitar) to attempt to shore up this claim.

State Farm has a duty to fully and reasonably investigate a claim and attempt to value lost items. Where nothing other than a typed-written receipt has been provided as "proof," itself containing suspect errors, and no *evidence* has been provided to oppose summary judgment given the misrepresentations and inconsistencies identified by State Farm on which it based denial of the claim, summary judgment to State Farm is appropriate.[12]

These significant and unexplained misrepresentations cannot be explained away by unsubstantiated claims of "memory" problems. Castro does not address and provides no explanation for his creation and/or submission of contradictory and questionable documentary evidence. No reasonable juror could conclude upon the undisputed record here that State Farm was not entitled to deny the claim and void the Policy under the Concealment and Fraud provision of the Policy.

<u>Subsequent Farmer's Claim</u>. Castro's claim is further undermined by the inconsistencies shown in the Farmer's Claim, which sought coverage for the exact same April 2014 burglary and for some of the exact same items, although additional items were included. Castro without explanation valued the following items for vastly less than he sought from State Farm:

- Guitars: Castro claimed two guitars were stolen in April 2014 (as opposed to the one he claimed to State Farm), a Fender valued at $900 and a Martin acoustic valued at $5,300.
- Socket set: Castro claimed the snap-on socket set (the same one Castro allegedly received from Tilseth for $6,000, as presented in the State Farm claim) was valued at $400 and received from Gino Herrera.

---

[12] State Farm also notes that in his Farmer's Claim, Castro claimed that in the same April 2014 robbery he lost a $900 Fender Stratocaster guitar and a Martin guitar valued at $5,300. As to the Fender Stratocaster, in Castro's prior State Farm claim stemming from the November 2013 robbery, Castro claimed that a Fender Stratocaster worth $900 had been stolen. Okino Decl., Ex. 44.

11

- Husqvarna chainsaw: Castro claimed this was purchased from Gino Herrera for $200 (not purchased in Portland and for $460 as presented in the State Farm claim).
- Martin hunting bow: Castro claimed this was purchased from Gino Herrera for $200 (not purchased in Portland and valued at $1,000 as presented in State Farm claim).

State Farm was unaware of the Farmer's Claim when it denied Castro's claim. While I do not need to rely on the evidence from Castro's Farmer's Claim in ruling on the question of whether State Farm properly invoked the Concealment and Fraud exception, it only strengthens the grounds for State Farm to void the Policy for Concealment and Fraud. Castro's credibility is fatally undermined by the Farmer's Claim evidence.

In sum, State Farm is entitled to summary judgment that it was entitled to deny the claim and void the Policy under the Concealment and Fraud provision of the Policy.[13]

## II. BAD FAITH AND PUNITIVE DAMAGES

"[T]o establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990); *see also Century Sur. Co. v. Polisso*, 139 Cal. App. 4th 922, 949 (2006) ("a breach of the implied covenant of good faith and fair dealing involves something more than a breach of the contract or mistaken judgment. . . . There must be proof the insurer failed or refused to discharge its contractual duties not because of an honest mistake, bad judgment, or negligence, 'but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'" (internal citation omitted)).

"Withholding benefits due under the policy is not unreasonable if there was a genuine dispute between the insurer and the insured as to coverage or the amount of payment due."

---

[13] As noted above, State Farm also moved for summary judgment contending that under the doctrine of judicial estoppel, Castro should be precluded from pursuing this claim because it was not listed as an asset in Castro's bankruptcy proceedings which terminated in October 2014. Mot. 13-16. In light of my conclusion on the denial under the Concealment and Fraud provision, I need not reach this argument.

12

*Rappaport-Scott v. Interinsurance Exchange*, 146 Cal. App. 4th 831, 837 (2007). However, "the genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds." *Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 723 (2007).

"While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001), *as modified on denial of reh'g* (July 30, 2001). Where there is a "genuine dispute" over an insurer's duty to pay benefits, the insurer does not breach the implied covenant. *Id.* at 347.

In Opposition, Castro argues that State Farm breached its duty to fully investigate Castro's claim because it had knowledge of Castro's brain trauma but never secured an Independent Medical Exam (IME) to ascertain whether Castro's brain injury played a role in his alleged inability to comply with the terms of the Policy before denying the claim and voiding the Policy under the Concealment and Fraud provision. Oppo. 18-19. As an initial matter, as discussed above, it was not only the inconsistencies in Castro's testimony that led State Farm to conclude Concealment and Fraud were at play, but also that Castro produced suspect "evidence" including "statements" allegedly typed by Tilseth and Freitas on Castro's computer where Tilseth and Feitas misspelled their own names, and the belated October 2014 handwritten Tilseth receipt. The circumstances surrounding these documents support a conclusion of fraud, not just mistake or omission. Moreover, as State Farm clarified in the EUO, Castro does not have a diagnosed memory condition, has not sought treatment for any memory issues, and has not lost job opportunities as a result of his memory problems. All that State Farm knew was that Castro sometimes had trouble recalling information due to his 1981 injury and surgeries and stated that his 2013 injury impacted his ability to recall things *prior to* that incident. Castro presents no authority that would even suggest that in light of the information known to State Farm, it was under a duty to secure an IME to determine whether Castro's alleged but unsubstantiated "memory

13

issues" impacted his ability to present his claim.[14]

The undisputed evidence shows that State Farm conducted a thorough and fair investigation. At a minimum, and even if I had not determined above that State Farm was entitled to deny the claim and void the Policy under the Concealment and Fraud provision, given the evidence about the continual shifting of the information regarding the source, value, and sometimes type of the objects claimed stolen by Castro, there was a "genuine dispute" over coverage that precludes a bad faith claim as a matter of law.

### III. PUNITIVE DAMAGES

State Farm also argues that it is entitled to summary judgment on plaintiff's claim for punitive damages because both its investigation of and determination on Castro's claim was reasonable and done in good faith. Where there is no bad faith as a matter of law, there can be no basis for punitive damages. *See, e.g., Behnke v. State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1470 (2011); *Chaidez v. Progressive Choice Ins. Co.*, No. CV 12-03753 RSWL, 2013 WL 1935362, at *7 (C.D. Cal. May 9, 2013).

### CONCLUSION

For the foregoing reasons, summary judgment is entered in favor of State Farm.

**IT IS SO ORDERED.**

Dated: June 7, 2017

William H. Orrick
United States District Judge

---

[14] In Opposition, plaintiff implies that State Farm learned in an August 28, 2014 call that Castro was "fresh out of a brain surgery" and at that point an IME was necessary. Oppo. 18-19. There is no evidence that Castro had surgery in August 2014 or any time other than in 1981. Castro's testimony is consistent that he had two surgeries back in 1981. *See* EUO Tr. 30:21 – 31:6; *see also* April Statement 16:7-8, August Statement 22:19 – 23:2. At oral argument, plaintiff's counsel argued that during the August 28th call Castro *himself* was mistakenly suggesting he had just come out of brain surgery, and that therefore State Farm should have recognized Castro suffered from memory or other neurological impairments. However, as the State Farm agent's note indicated, Castro was simply "reminded" of his past injury. Okino Decl., Ex. 27.

14